Newton v. Lyon.

---

EDMOND B. NEWTON *et al.* v. STEPHEN LYON *et al.*

No. 11,719.*  (64 Pac. 592.)

AGREEMENT TO DEVISE LAND—*Cases Distinguished.* The cases of *Reed, Ex'r, v. Hazleton*, 37 Kan. 321, 15 Pac. 177, and *Hazleton v. Reed*, 46 Kan. 73, 26 Pac. 450, distinguished.

Error from Labette district court; A. H. SKIDMORE, judge. Rehearing. Opinion filed April 6, 1901. *In banc.* Reversed.

*M. E. Williams*, for plaintiffs in error.

*A. D. Neale*, for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : On motion for rehearing, it was strenuously urged that the decision of this case conflicts with the former cases of *Reed, Ex'r, v. Hazleton*, 37 Kan. 321, 15 Pac. 177, and *Hazleton v. Reed*, 46 id. 73, 26 Pac. 450. These cases were not called to our attention upon the former hearing, and were overlooked by us ; hence we have deemed it well to renew the consideration of the present case, to discover the applicability to it, if any there be, of the former decisions.

The case of *Hazleton v. Reed*, 46 Kan. 73, 26 Pac.

---

*For opinion delivered upon the first hearing, see *Newton v. Lyon*, ante, p. 306, 62 Pac. 1000.—REP.

450, was a reappearing phase of *Reed, Ex'r, v. Hazleton,*
37 id. 321, 15 Pac. 177. The two may be, therefore,
considered together. The facts of those cases were
that John Hazleton, at the solicitation of his father-
in-law, Henry Rickett, removed from his home, in
Morris county, to the latter's home, in Ottawa county.
The two made an oral agreement, which about a year
thereafter was reduced to writing, and which pro-
vided in substance : (1) That Hazleton was to feed and
care for Rickett's cattle for a share of their increase ;
(2) Hazleton was to make his home with Rickett;
(3) Rickett was to retain possession of his home and
make such improvements on it as he felt able to make ;
(4) Hazleton was to take care of Rickett in health and
sickness ; (5) the paper read : "After the death of
said Henry Rickett, the right and title to the north
half of the northwest quarter of section 13, township
11, range 1 west, of Ottawa county, Kansas, shall
vest in the said John Hazleton." The question in
the case arose upon the instrument of writing executed
by the parties, and it was viewed as a question of
construction of contract, apart from any extraneous
facts. In the first case it was remarked : "We shall
not discuss the alleged error that the findings of fact
are not within the issues of this case ; if they are,
they would not alter the construction which we be-
lieve ought to be placed upon this instrument." In
the latter case it was said : "Upon the part of the
plaintiffs, it is claimed that, *within the terms of the con-
tract,* Rickett was under obligation to make such pro-
vision by deed or will as would vest the title to the
land in Hazleton." Viewing the question in the case
as one of interpretation of words merely, the court
ruled, as expressed in the latter case :

"It may be laid down as a general rule, that a writ-
ten instrument which discloses the intention of the

maker respecting the posthumous destination of his property, and which is not to operate until after his death, is testamentary in its character, and not a deed or contract, and may be revoked."

It is, however, admitted in both cases and expressed in the first one that, "if an instrument in writing concerning real estate passes a present interest therein, although the right to its possession and enjoyment may not accrue until some future time, it is a contract."

It is plain, therefore, that there is no conflict between the abstract principle of law heretofore declared in this case and the former decisions to which we have adverted. A contention, therefore, can only exist as to the similarity of facts of the two cases. The facts are dissimilar, and the law, in consequence, is dissimilar. We think that, by the allegations of the petition in this case, the truthfulness of which allegations was admitted by the demurrer, a present interest in the land, the subject of negotiation between Elam S. Hitchcock and the Newtons, his daughter and son-in-law, passed to the latter.

The petition averred, among other things, that plaintiffs, at the request of Hitchcock, built a dwelling-house upon the latter's town lots, at a cost of $500, under a promise that if they would do so he would convey the property to them; that they resided in the dwelling upon the lots for about a year, and then gave possession to Hitchcock, the latter continuing his promise to make the conveyance. The petition, which was in the form of a bill in chancery, then averred as follows:

"Your orator further represents that in 1882 the matter of the deed to the lots or some provision in lieu of it again arose, and the said Elam offered in writing to make testamentary provision for your

oratrix of either the farm or the lots aforesaid, and
expressed a desire that your oratrix accept the farm
in lieu of the lots, and also stated to your orator that
he would in the future need help to improve and carry
on the farm, and that he must hold on to the farm for
its income during the lifetime of him and his said wife,
Susan.    Whereupon your orator promptly responded,
in substance, that a testamentary devise of the farm
land to your oratrix would be satisfactory to them,
and your orator would endeavor in all cases to assist
him, the said Elam, with such money and otherwise as
his necessities might require in paying taxes, making
and keeping up improvements on said farm, and thus
insure the said Elam and Susan a sufficient income to
provide for all their bodily wants and physical comfort
during their declining years.    And it was thus arranged
as aforesaid that your oratrix should receive such
farm in lieu of said town lots, or said debt growing
out of the improvement of said lots by your orator as
aforesaid ; and that the said house and lots, as your
orator understood, together with certain insurance
money expected to be derived from certain insurance
policies which your orators understood were carried
by said Elam, should become the property of them,
the said Cornelia Lyon and George Hitchcock, as the
said Elam might devise or bequeath.    Your orators
further represent that, soon after said agreement was
concluded as aforesaid, the said Elam, in writing, gave
your orators to understand that he had made the pro-
vision for your oratrix by deed of conveyance or testa-
mentary devise, to take effect after the demise of
himself and said Susan B. Hitchcock, and that he
would never change it ; and your orators aver that
they never knew that said Elam ever made any other
provision than as aforesaid until after his decease ;
and your orators, relying upon the agreement afore-
said, and the good faith of said Elam in the premises,
and the provision for your orator alleged to have been
made as aforesaid, thereafter at divers times during
many years, and at the request of said Elam S. Hitch-
cock, furnished him with large sums of money to be

used in paying taxes, building new buildings, and repairing and constructing old buildings and new fences, setting out fruit-trees, subduing or breaking the prairie sod, and making pastures on the said farm; and in consideration of said promise your orators relinquished their claim upon the house and lots hereinbefore described."

By reference to the statement of facts made in the former opinion, it will be observed that in September, 1882, the father wrote a letter to the son-in-law in which he gave the latter an option to take the farm or take other property. A paragraph of the petition not noted in the former statement of facts seems important to quote now in connection with the letter of September, just mentioned. Changing from the style of a bill in chancery, the petition continued as follows;

"Plaintiffs allege that, in answer to the proposition contained in the September letter of 1882 of said E. S. Hitchcock, the said E. B. Newton, to further affirm his desire to take the farm, as expressed in his letter of August 23, 1882, wrote a letter to said Hitchcock, an exact copy of which cannot be given because the same is not now in their possession, substantially expressing as before a willingness to be satisfied with the division as stated in said Hitchcock's letter of August 18, 1882; also reaffirming a willingness to contribute to the care and support of said Hitchcock and wife and to make advances of money for taxes, improvements, etc., and to consider the $500 by the said Hitchcock acknowledged to have been furnished by the said Newton in building a house on said Hitchcock's lots as satisfied and paid by the greater value of said farm, as shown by said Hitchcock in his letter of August, 18, 1882."

In view of the above-quoted allegations of the petition, and in view of the correspondence between the parties quoted or referred to in the former statement of facts, it is impossible to escape the conclusion that

the parties intended that a present interest in the farm should vest in the Newtons. The correspondence itself may not sufficiently disclose such intention, but the allegations of fact in the petition, taken in connection with the correspondence, do disclose it. If the evidence furnished by the letters can be supplemented by further competent evidence, as the allegations of the petition supplement the correspondence, the passing of a present equitable interest in the land will be proved. An important element of such proof will be the consideration which passed from the Newtons to Hitchcock. Such element was lacking in *Reed v. Hazleton*, supra, or, at least, was not so clearly discernible in that case as to be taken into account in its determination. Hitchcock put the Newtons in the possession of the town lots, with a promise of conveyance. Upon the faith of that promise and in pursuance of their right of possession, the Newtons made valuable and lasting improvements upon the lots. They could have maintained an action for specific performance and compelled the execution of the conveyance. (*Galbraith v. Galbraith*, 5 Kan. 402.) That right to a conveyance remained in the Newtons. It was surrendered in consideration of a promise to devise other real property, subject only to a life-estate in the devisor and his wife. This was an arrangement taking effect *in præsenti* for the adjustment of property interests *in futuro*. It was followed by the making by the Newtons of valuable and lasting improvements upon the farm, or, what is the same thing, furnishing money to Hitchcock to make such improvements, and this money was furnished, according to the allegations of the petition, upon the faith of a valid contract and an unrevoked intention to devise the land upon which the improvements were made.

The case is one where the owner of land surrenders it to another upon the written agreement of that other that he shall have an equivalent tract of land to be secured to him by devise. This was a contract for the interchange of present interests in real property, and, although the time when one of the parties was to come into the enjoyment of his interest was deferred to the future, yet that did not make it any the less a present interest. If one conveys a valuable present interest in property, in consideration of an agreement to make a future grant of a specifically described equivalent, the conclusion is strong that the parties intended a present passing of property interests. If, however, the agreement consists of mutual promises, unexecuted on either side, and to be executed by acts of service on the one side, but with no binding obligation on that side to perform the service, and to be executed on the other side only when the service should be performed, it cannot be said that any present property interest passes. Now, that was the Reed-Hazelton contract. What Hazelton was to do for Rickett was to perform services. There was, however, no binding obligation upon him to perform the service. Specific performance to compel the service would not have lain, nor damages for its non-performance. Assuming that which was not expressed in the contract, but which perhaps was inferable from its terms, to wit, the agreement to perform services for the agreement to devise, yet the interest in the land could not pass until the services were performed ; therefore the promised interest in the land could not take effect in the lifetime of the promisor.

We adhere to our former view, that the demurrer to the petition should have been overruled. As before ordered, the judgment of the court below will be reversed.