No. 33,239

CLAUDIA ROBERTS, *Appellee*, v. THELMA IZORA McCOACH et al., *Appellants*.

(65 P. 2d 289)

Opinion filed March 6, 1937.

*B. J. Carver,* of Paola, for the appellants
*Ben F. Winchel,* of Osawatomie, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to set aside two deeds on the ground that they had never been delivered to the grantees during the lifetime of the grantor, and that after his death they were taken possession of wrongfully and recorded by the grantees. The trial court made findings of fact and rendered judgment for plaintiff. The principal defendants have appealed.

The record discloses substantially the following: Luther Roberts, a resident of Miami county, was the owner of two tracts of real property. His first wife died. They were the parents of four children. On May 8, 1923, when he was planning to be married a second time, he went to the office of B. L. Sperling, a capable attorney at Paola, and had him prepare two general warranty deeds, one for

each tract of real property, which purported to convey the property from himself to his four children, and signed and acknowledged the deeds. When the deeds were executed two of the children were present: Thelma, then about eleven years of age, and Ivil, then about nine. After the deeds were executed Mr. Sperling handed them to Thelma, who looked at them and handed them back to Mr. Sperling, who appears to have retained them in his office until his death, some three years later, when they were turned over to Mr. E. J. Sheldon, an attorney at Paola, who appears to have retained them until his death, when they passed into the possession of the grantor. Both Sperling and Sheldon were attorneys of the grantor, Luther Roberts. About sixteen days after the execution of the deed the grantor, Luther Roberts, married Mattie Bowers, as his second wife. They were divorced in 1927 in an action brought by her. On June 9, 1932, Luther Roberts married the plaintiff in the present action, Claudia Roberts. They continued to live together as husband and wife on a tract of land described in one of the deeds until his death, January 1, 1936. After his death an administrator was appointed for his estate, and he, together with the plaintiff and the children by his first wife, went to the Roberts home for the purpose of seeing what papers he had in his iron safe which he kept there. None of them could open the safe, or knew the combination for it. They got the combination from the widow of a brother of Luther Roberts, who had the safe in his home for a time some years before, at which time the numbers forming the combination had been written on a sheet of paper. With the aid of that they were able to open the safe. Among other things found therein were the two deeds. The papers found in the safe were taken by the administrator to the office of the probate court, where there was some discussion as to what should be done with the deeds. The probate judge advised that since they pertained to real property, over which the administrator would probably have no control, the parties had better get the advice of some attorney as to what to do with them. Some of the defendants advised with an attorney, with the result that they took the deeds and placed them of record. Aside from the time they were handed to one of the grantees by Mr. Sperling the day they were executed, and handed back to him, none of the grantees had ever seen the deeds, or had any possession or control of them, and at the time of the death of the grantor did not know they were still in existence. They had been kept all the time in

the possession of the grantor or one of his attorneys. The safe in which the deeds were found was formerly owned by Luther Roberts' grandfather, who for a time was probate judge of that county. It had been used in the home of different members of the family, and since 1930 in the home of Luther Roberts. In addition to these two deeds it contained several old title papers, one or more oil and gas leases, and perhaps some other papers of no immediate value. The evidence disclosed that neither the plaintiff nor any of the children of Luther Roberts knew the combination of the safe or could open it. He himself knew the combination and used it for such papers as he desired to place there. The trial court accordingly found that the deeds had never passed from the possession of the grantor during his lifetime, and had never been delivered to the grantees. Appellants complain of that finding and contend that there was a delivery on the day they were executed. Thelma testified that when she handed them back to the attorney she told him to keep them. The trial court did not include that statement in its findings of fact, but from it appellants argue that this was a completed delivery of the deed, that the attorney was of necessity to keep them for the grantees. It is argued if a deed is once delivered the fact that it again got into the possession of the grantor would not defeat the delivery. On this point appellants cite *Withers v. Barnes,* 95 Kan. 798, 149 Pac. 691; *Gideon v. Gideon,* 99 Kan. 332, 161 Pac. 595, and *Postlethwaite v. Edson,* 102 Kan. 619, 641, 642, 171 Pac. 769. These cases are not especially helpful to appellants. In the Withers case the grantor delivered the deed to the only living grantee and told her to take it to a named attorney to hold until after his death and then to record it. This was done. The grantor never again had possession of it, nor attempted to exercise any control over it. In the Gideon case the grantor delivered the deeds to an attorney with written instructions for him to hold them until after her death and deliver them to the grantee, and in the presence of the grantor they were placed in an envelope so marked. The grantor never again had possession of them, or attempted to exercise control over them. The Postlethwaite case deals principally with the effect on rights of creditors of a will devising a homestead. In the course of a lengthy opinion, and by way of argument, the Gideon case is referred to (p. 642), also *Nolan v. Otney,* 75 Kan. 311, 89 Pac. 690, illustrating how a deed may be made and delivered to a third party with instructions to deliver it to the grantee after the

death of the grantor. The conditions found or referred to in the cases cited do not fit the evidence in this case. It is true one of the grantees, Thelma, testified Mr. Sperling handed the deed to her, she looked at it, and handed it back to him and told him to keep it. The trial court was not compelled to believe that testimony in its entirety, and we judge it did not do so since all of it was not included in the findings. But conceding for the moment that the deed was handed to the attorney by one of the grantees, with directions for him to hold it, that is only a part of the evidence pertaining to the question of whether the deeds were delivered. Sperling was the attorney of the grantor, not the attorney of the grantee. In addition to preparing these deeds for the grantor he also prepared, in contemplation of the grantor's approaching marriage, an antenuptial agreement to be signed by the parties with respect to their property rights and rights of inheritance, which the prospective bride declined to sign. It is reasonably clear Luther Roberts was endeavoring to execute some papers respecting his property that might be used to affect the interests of his second wife therein. And in this case the court found the deeds were executed by Luther Roberts in an attempt to place the property beyond the reach of his second wife. The deeds remained apparently with Mr. Sperling, who continued as the attorney of the grantor. They next showed up in the divorce suit with his second wife. They were then in possession of the grantor and his attorney, and testimony concerning them was given in the trial of that case. They next showed up in the sole possession of the grantor. In the more than twelve and one half years from the date of their execution until after the death of the grantor, the grantees had never seen the deeds and did not know, in fact, whether they were in existence. Each of them so testified. There was evidence that to the general public and to those with whom he had business transactions Luther Roberts at all times held himself out to be the owner of this property. He did so in a written statement made to a bank from which he borrowed some money, in an application for an insurance policy for the improvements on the premises, and in at least one oil and gas lease which he executed; also a small portion of it was condemned for highway purposes and he accepted the money.

The delivery of a deed is largely a matter of intention, as shown by all the facts and circumstances. To establish delivery it must appear that the deed passed beyond the control of the grantor.

(*Worth v. Butler*, 83 Kan. 513, 520, 112 Pac. 111.) The passing of the instrument to the grantee does not constitute delivery unless the parties so intended. (*Poteet v. Knappenberger*, 139 Kan. 534, 536, 31 P. 2d 1003.) One who executes a deed to property he owns, and retains possession of the deed until his death, dies in the full ownership of the property. (*Young v. McWilliams*, 75 Kan. 243, 245, 89 Pac. 12; *Alward v. Lobingier*, 87 Kan. 106, 123 Pac. 867.) There are many other authorities to the same effect. Under the facts in this case and well-established rules of law the court was justified in finding and holding there had been no delivery of the deeds in question during the life of the grantor.

Appellants call attention to a phrase in the deeds indicating the grantor reserved a life use of the property, as indicating his purpose that they should be delivered when executed. There is much to discredit that view. The deeds were on a printed general warranty-deed form, the blanks of which had been filled in with a typewriter. When introduced in evidence, following the words stating the consideration, "one dollar, love and affection," were the words, "but shall retain it his lifetime." These words last quoted were written with pen and ink and were partially interlined, giving the appearance of having been inserted after the deeds had been written on the typewriter. While our attention is called to no evidence on the point, perhaps they were written by the grantor; but, if so, it was done with a finer pointed pen and a different colored ink than that used by him in signing his name to the deeds. Thelma testified that when the deeds were handed to her on the day they were executed, and she looked at them, she did not notice anything in the deeds by which the grantor was retaining an interest in or use of the property. When the grantor was testifying about these deeds in his divorce suit with his second wife in 1927 he testified that the deeds conveyed full title, without any reservations. From these facts the court would be justified in concluding that the clause, "but shall retain it his lifetime," was not in the deeds when they were first executed but were placed there sometime after 1927 by someone, possibly the grantor.

The court further found that the plaintiff had no personal knowledge of the existence of the deeds in question until after the death of her husband. Appellants complain of this finding as being contrary to the evidence. There was some conflict in the evidence on this point, but there was an abundance of substantial evidence to

support the findings of the court. The evidence in opposition to the findings consisted mainly of testimony of witnesses to the effect that Luther Roberts had stated that he had told plaintiff about the deeds; but none of these statements is shown to have been made in plaintiff's presence. Appellants complain of some of the other findings of the court as not being sustained by the evidence. We have examined these contentions and find them not to be well taken. There is ample, substantial, competent evidence to sustain all of the findings made by the trial court.

Appellants argue their demurrer to plaintiff's evidence should be sustained for the reason that it shows no fraud on the part of the grantees of the deeds. In this connection they argue that any fraud or connivance of the grantor, Luther Roberts, shown by the evidence cannot be imputed to the grantees. The point is no longer important, since the case was fully tried out. The wrongful conduct charged in the petition as against the grantees was the taking possession of the deeds and recording them after the death of Luther Roberts. The evidence disclosed they did that on the advice of an attorney. This would indicate no intentional wrongdoing on their part. The real charge and the proof tended to show that was a legal wrong to plaintiff. The record indicates the parties had a fair trial and that a proper result was reached.

We find no error in the record. The judgment of the court below is affirmed.