No. 34,485

JOE IMTHURN, as Administrator of the Estate of Bessie Wolcott, Deceased, *Appellee,* v. J. T. MARTIN, *Appellant.*

(96 P. 2d 860)

Opinion filed December 9, 1939.

*Homer V. Gooing,* of Eureka, *Edward H. Rees* and *Everett E. Steerman,* both of Emporia, for the appellant.

*Clay C. Carper, Harold G. Forbes* and *Thomas C. Forbes,* all of Eureka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by an administrator to recover property alleged to belong to his decedent. At the trial plaintiff moved for judgment on the pleadings and opening statements. The motion was allowed and a judgment rendered from which defendant appeals.

Briefly stated, the petition alleged that one Bessie Wolcott died intestate on October 21, 1937, and that plaintiff was appointed administrator of her estate; that at the time of her death she was in poor bodily and mental health and wholly incapable of transacting business or entering into any legal transaction affecting herself or her property rights; that shortly before her death she was possessed of personal property consisting chiefly of money in the approximate amount of $3,100; all of which was well known to the defendant, who, with a design and purpose to acquire the property for himself, induced Bessie Wolcott to enter into a written contract which provided that she transfer all of her personal property to defendant, who agreed to look after her for the remainder of her lifetime or until such time as the expense for her care equaled the amount of her property received by the defendant, and thereafter defendant's obligation should cease; that all of the acts of defendant in obtaining the contract were fraudulent; that plaintiff did not have a copy of the contract, the same being in possession of the defendant, and that there should be disclosure thereof; that defendant had at all times refused to account to plaintiff as administrator for any or all of the cash or personal property received by him from Bessie Wolcott. The prayer was for discovery of the contract, for an accounting thereunder, and for judgment for the amount shown due by the accounting, etc.

Defendant's answer denied generally but admitted the death of Bessie Wolcott, alleged the making of the contract between her and defendant on September 27, 1937, a copy being attached to the answer; that under the contract Bessie Wolcott paid over to him $3,182.61 and he proceeded to perform the duties imposed on him thereunder, specifying certain of those duties performed. By way of cross petition, defendant alleged that Bessie Wolcott owned other personal property which at her death came into possession of plaintiff, but which defendant was unable to list or describe; that under the above contract all such property belonged to him and he

was entitled to discovery and accounting. He prayed that plaintiff take nothing and that he have appropriate relief under his cross petition. Plaintiff's reply neither admitted nor denied the copy of the contract attached to the answer was true and correct, but asked that strict proof be made, and also that strict proof be made of amounts expended under the contract. There was general denial of all allegations controverting the allegations of the petition. As prepared, the paragraphs of the contract were not numbered. We have inserted numbers so that reference to particular parts may be more easily made. The contract reads:

(1) "This contract and power of attorney made and entered into this 27th day of September, 1937, by and between Bessie Wolcott, party of the first part, and J. T. Martin, party of the second part.

(2) "Witnesseth: Whereas, Bessie Wolcott is a widow, and will soon be 72 years of age, and is alone in this world and needs the care and assistance of someone younger to take care of her business and her property, and having known J. T. Martin for a good many years, and having full confidence in his honesty and integrity, I desire that he take care of all my money, and any other property that I may possess, and take care of me in any way that he deems best and for my health and comfort, and to this end we make the following agreement.

(3) "That Mr. J. T. Martin hereby agrees to take care of me in a way that I should be taken care of, seeing that I have sufficient clothing and food and the other necessaries of life. He may do this personally or have some one else care for me, but he is to have general supervision and care of me and all of my property, and to pay anyone that cares for me out of any funds in his hands.

(4) "It is further agreed that at my death that Mr. Martin is to see that I have a decent burial and pay for same out of my funds and property.

(5) "As consideration for the care and keep of myself and for Mr. Martin taking care of my business for me, and providing me with a decent burial at my death, I do hereby turn over to Mr. J. T. Martin all monies and all property of every kind and character that I possess at this time, and I hereby authorize the Madison Bank, Madison, Kansas, to turn over and pay to Mr. J. T. Martin any money that I may have on deposit in said bank, and also authorize anyone else having any of my property to turn the same over to Mr. Martin for my use and benefit.

(6) "It is further agreed that when Mr. Martin shall expend for my support all of the money that he may have of mine, that he is under no further legal obligation to take care of me, and I understand that other provisions shall be made for my care and keep.

(7) "It is further agreed between said parties that if the said Bessie Wolcott shall die before her money and property has all been expended, that Mr. J. T. Martin shall have for his labor in taking care of the said Bessie Wolcott all monies and property that I may leave at my death.

(8) "I, Bessie Wolcott, state that Mr. Darby has carefully read over this

contract and power of attorney to me, and that I fully understand the same and am signing this contract knowing and feeling that it is for my best interests, as I feel that I need someone to look after my property, and see that I have good care and not be worried with my money or property, and I am signing this contract of my own free will and volition.

(9) "I have no near relatives that will care for me, and I have known Mr. Martin and his wife for so many years, and they have been good to me and I feel certain that they will continue to do so, and for that reason I desire that Mr. Martin have any money or property that may be left at the time of my death."

Plaintiff may not have judgment in his favor by reason of anything said in his opening statement, so it need not be reviewed. Defendant's opening statement as to what his evidence would show referred to many matters connected with Bessie Wolcott's earlier life, accumulation of some property, her marriage, the death of her husband, the sale of certain real estate; that shortly after her husband's death she went to Vermont, later to Canada, and that on September 16, 1937, some person returned her from Canada to Madison, Kan., her home city, and attempted to turn her over to the city clerk, who refused, and she was then taken to the home of Mr. Martin, who was a good friend; that he made certain efforts to secure a place where she could stay, which it is not necessary to detail; that finally Mr. Martin took her to Mr. Darby, in Eureka, who conferred fully with her, Mr. Martin not being present, the contract resulting from that conference, and that thereafter certain arrangements for her care were made, until October 14, when she broke her hip; that she was taken to a hospital and died in about a week; that pursuant to the agreement Mr. Martin had paid all claims and obligations due and owing by reason of anything he had done under the contract in the sum of approximately $900.

As gleaned from the journal entry of judgment, at the conclusion of defendant's statement plaintiff made his motion for judgment and—

"Upon inquiry by the court, plaintiff in open court agrees that the court should in any event find and allow any expenditures made by defendant Martin under the contract in question and should determine his compensation."

And after hearing argument on the motion the court found the contract—

"Is in the nature of a trust, and testamentary, and that defendant is not entitled to recover under said contract as per its terms, and that said trial should proceed only as to the accounting of sums received and expended by defendant Martin,"

and that the defendant then elected to stand upon the ruling made on the motion without introducing evidence on the accounting. The court then found defendant should pay into court the sum of $2,000, etc., and rendered judgment accordingly.

The record is barren of information as to how this amount was determined, but apparently the trial court assumed defendant had received $3,182.61 and had paid out about $900 as alleged in his answer, leaving him charged with $2,282.61, the difference between that amount and $2,000 being the allowance made for compensation for services rendered.

Appellant directs our attention to *Caylor v. Casto*, 137 Kan. 816, 22 P. 2d 417, and to cases cited therein to the effect that as opening statements are permissive and not obligatory no judgment should be rendered thereon unless it clearly appears that the statements are knowingly and completely made and disclose facts which absolutely preclude recovery by one party and compel a judgment in favor of the other. That such is the rule may not be doubted. But its application here does not follow. The motion here was directed at the pleadings and the statements. An element of plaintiff's case and defendant's defense was the legal effect of the contract, the execution of which was admitted. It clearly appeared from defendant's statement that he had received $3,182.61 of the moneys of Bessie Wolcott, and if the construction of the contract under which he received it led to the conclusion that he was not entitled to all of her property, but only to credit for amounts properly expended and to compensation for his services, then the court, treating the motion made as in the nature of a demurrer, correctly ruled the only matter at issue was the amount of the expenditures and of defendant's compensation for services rendered. We therefore proceed to examine the contract to determine its nature.

It is familiar law that in construing a contract one clause or paragraph may not be emphasized and another ignored, but the intention of the parties must be gathered from the whole instrument. Appellant makes some contention that upon execution of the contract the title to the property immediately vested in him, and that upon his performing fully on his part he became absolutely entitled to any unexpended portion of the funds delivered to him. It may be observed that the statements in the fifth paragraph may be said to warrant a conclusion that title did immediately vest. On the other hand there are repeated statements that lead to a contrary conclu-

sion. The third paragraph ends thus: "But he is to have general supervision and care of me and all my property." The fourth paragraph provides that Mr. Martin is to see she has a decent burial "and pay for same out of my funds and property." In the seventh paragraph she refers to "all monies and property that I may leave at my death." In the eighth paragraph the purpose expressed is to "see that I have good care and not be worried with my money or property," and in the ninth paragraph she expresses a desire that Mr. Martin "have any money or property that may be left at the time of my death."

Without repeating all of the contract, we are of opinion that reading all its parts together leads to a conclusion an immediate passing of title was not intended and did not occur.

Our attention is also directed to authorities bearing on whether the contract provided for disposition of property at the death of Bessie Wolcott, and if it be held to be testamentary, that it is invalid because not executed in the manner provided by statute for making a will. (G. S. 1935, 22-201 *et seq.*) Although we have many decisions dealing with situations arising under various circumstances, we shall not review them but shall call attention to two which state the basic rule.

In *Reed, Ex'r., v. Hazelton,* 37 Kan. 321, 325, 15 Pac. 180, it was said:

"If an instrument of writing passes a present interest in real estate, although the right to its possession and enjoyment may not accrue until some future time, it is a deed or contract, but if the instrument does not pass an interest or right until the death of the maker, it is a will, or testamentary paper." (p. 325.)

The test for determining was laid down in *Powers v. Scharling,* 64 Kan. 339, 343, 67 Pac. 820, in the following language:

"In determining whether an instrument be a deed or will, the question is, Did the maker intend to convey any estate or interest whatever to vest before his death and upon the execution of the paper? Or, on the other hand, did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter, a will." (p. 343.)

We think that the above contract, tested under the above rules, shows a situation where the right of Mr. Martin to receive any residue that might remain did not vest until the death of Bessie Wolcott. The instrument was testamentary in character, but was not sufficient as a will.

That, however, does not dispose of the contractual features of

the document. The writing may be good as a contract, even though not valid as a will. (*Stahl v. Stevenson,* 102 Kan. 844, syl. ¶ 4, 171 Pac. 1164.) It has been repeatedly held that where a definite contract to leave property by will, or in payment for services rendered, has been clearly established, and there has been performance by the promisee, equity will grant relief, if there is no inadequacy of consideration, and in equity and good conscience the promisee should have and enjoy the property sought as against those who would otherwise be entitled to it. No attempt will be made to collect the cases so holding. Examples are: *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743; *Braden v. Neal,* 132 Kan. 387, 391, 295 Pac. 678; *Woltz v. First Trust Co.,* 135 Kan. 253, 259, 9 P. 2d 665; *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571; *Dent v. Morton,* 148 Kan. 97, 101, 79 P. 2d 875. An examination of the contract before us discloses that under it as a whole, and under paragraph 6 in particular, the promisee's obligation was limited to seeing that Bessie Wolcott had a place to live and that he would pay her expenses until her death or until her money was exhausted, whichever occurred first. If she died first, he was to get what was left as compensation for his services. If exhaustion of her funds occurred first, he was without further legal obligation. He stood to gain much and to lose little. The contract is open to the inference that it was to his interest that Bessie Wolcott be taken care of in a niggardly and shabby manner, so that some of her funds would remain unexpended at the time of her death, or to the inference that her early death would be to his material advantage. Such a contract could hardly be said to be equitable or conscionable, regardless of any evidence of performance under it; a mere reading of the contract shows that the trial court rightly concluded the defendant was not entitled to recover under the contract "as per its terms." It clearly appears from defendant's opening statement that the services he performed under the contract were all rendered within a period of four weeks and very likely consumed but a minor part of his time, and that whatever he did could be well compensated by a sum far short of the amount in his hands according to his opening statement.

No complaint is made that, assuming the trial court's disposition to be otherwise correct, the allowances for expenditures for bills paid and for defendant's compensation are either wrong or inadequate.

We are of opinion the trial court properly disposed of the action, and its judgment is affirmed.