No. 36,267

CHARLES A. LOWRY, *Appellant*, v. HARRY V. LOWRY and MARY LOWRY, his wife, JAMES G. LOWRY and CARRIE LOWRY, his wife, IDA L. POWERS and HARVEY POWERS, her husband, and MARGARET HICKS and FRED P. HICKS, her husband, *Appellees*.

(159 P. 2d 411)

Opinion filed June 9, 1945.

*Harry K. Allen*, of Topeka, argued the cause, and *L. M. Ascough*, of Topeka, and *Fred Swoyer*, of Belleville, were on the briefs for the appellant.

*Bert L. Woods*, of Garnett, argued the cause for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action in partition between heirs. Defendants prevailed and plaintiff appeals.

It was agreed the parties were entitled to partition of the real estate, but the fractional interest of the parties was in dispute. The interest of the parties in the land depended primarily upon the legal effect of two instruments in the form of warranty deeds executed by one of the heirs to certain other heirs. That issue was tried by the court without a jury and resolved against the plaintiff, who contended no interest was passed by the instruments.

Both deeds were executed by the grantor, Elma Lowry Bacon, on the same date, January 25, 1930.

The grantor died November 29, 1939. The grantee in one deed was Harry V. Lowry and the grantees in the other deed were James G. Lowry and Ida Lowry Powers. The pertinent clauses in the

deeds were identical except that reference to the grantee and his heirs was in the singular in the first mentioned deed and in the plural in the section mentioned deed. The granting clause in the first mentioned deed reads:

"WITNESSETH, That the said party of the first part, in consideration of the sum of One and no/100 DOLLARS by these presents does Grant and convey to the said party of the second part, his heirs and assigns the un-divided one-sixth interest in all the tract or parcel of land situated in the County of Anderson and State of Kansas and described as follows, to-wit: [Description of real estate.] . . . with the appurtenances, and all the estate, title and interest of the said party of the first part therein."

The warranty clause read:

"And the said Elma Lowry Bacon does hereby covenant and agree that at the delivery hereof *which is to be at her death* she is the lawful owner of the premises above granted and seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrance . . . and that . . . will WARRANT AND DEFEND the same. . . ." (Our italics.)

On the back of the same deed were the words:

"This deed to be delivered to Harry V. Lowry or his heirs *at the death of Elma Lowry Bacon.*" (Our italics.)

On the back of the other deed were written the words:

"This deed to be delivered to James G. Lowry *for record at the death of Elma Lowry Bacon.*" (Our italics.)

The italicized words in the warranty clause and the directions on the back of both deeds were written with pen and ink.

The trial court found, under the evidence to be discussed presently, there was a delivery of the deeds approximately two weeks prior to the death of the grantor and that title to the fractional interest designated in the deeds had passed to the grantees named therein.

Appellant contends (1) there was no delivery and (2) assuming there was a delivery, the deeds were testamentary in character and not being executed in accordance with the law of wills they passed no title.

The grantor was a sister of the grantees. On November 14, 1939, approximately two weeks before the grantor's death, Harry V. Lowry visited at the home of the grantor, who had been in poor health for some time. It appears appellant stood upon his rights to exclude any testimony of Harry V. Lowry concerning communications and transactions had with the deceased grantor on the occasion

of that visit. The record does, however, disclose that Harry without objection was, in substance, permitted to testify: He acquired possession of the deeds on the occasion of the visit with the grantor; he took his own deed to his home and on the same evening delivered the other deed to the grantees named therein; the grantees retained the deeds in their respective homes until November 30, the day after the grantor's death; the brothers and sisters of the grantor were expected to arrive at the grantor's home for the funeral; he believed they might desire to list the assets of Elma's estate; on November 30 he, therefore, got the other deed from James and took both deeds to the grantor's home in order that the brothers and sisters might have an opportunity to see the deeds and know what disposition the grantor had made of the property therein described; the deeds contained revenue stamps which were dated "11-14-39," that being the date Harry obtained the deeds; the stamps were initialed "E. L. B." representing the name of the grantor; there was no evidence who placed the stamps upon the deeds or who initialed them.

The deeds were not recorded until after the grantor's death.

On redirect examination of the defendant, (appellee) Harry V. Lowry, his counsel inquired and the witness answered:

"Q. Harry, you heard the plaintiff testify on direct examination that he had a conversation with you in the summer of 1943 at the Topeka fair? A. Yes, sir.

"Q. And that you told him that your sister gave you those deeds some two weeks before she passed away? A. Yes.

. . . . . . . . . .

"Q. Did you tell him when the deeds were delivered? A. I did. Her health was very poor and she had been struggling with a lot of old papers at that time and she says, 'I have my deeds made out to that farm,' she says, 'I had made out a couple of years ago *and I am not changing it.*' She says, 'The way I feel now you better take these deeds and take them with you.'" (Our emphasis.)

It is true that possession by a grantee of a deed absolute in form is prima facie evidence of delivery which can be overthrown only by clear and convincing evidence and that the burden of showing nondelivery is upon the party who questions the delivery. (*Rohr v. Alexander*, 57 Kan. 381, 46 Pac. 699; *Hoard v. Jones*, 119 Kan. 138, 237 Pac. 888.) But these deeds on their face were not without condition or restriction. (See *Rohr v. Alexander*, supra, syl. ¶ 2.) They contained their own provision with respect to the date of delivery and it was fixed at the death of the grantor. Whether posses-

sion of a deed containing such an express provision with respect to delivery, together with the grantor's statement made at the time one of the grantees obtained custody or possession thereof that, "I am not changing it," can be said to constitute prima facie evidence of delivery with an intention of the grantor to divest herself of title, presents a more complicated question. On the subject of a grantor's intention to divest himself of title by delivery, see *Smith v. Dolman,* 120 Kan. 283, 284-285, 243 Pac. 323. We might encounter some difficulty in saying that the grantor under the circumstances here presented had placed the deeds beyond her control and power of recall during her lifetime. But what was the nature and effect of the instruments which were in the custody or possession of the grantees? After all that is the fundamental question. We prefer to go directly to that question.

All parties agree the instruments were not executed in accordance with the law of wills but were in the form of deeds. Were the instruments testamentary in character? That depends upon whether the interest they conveyed to the grantees was intended to vest presently or only after the death of the grantor. If the former was intended the instruments were deeds. If, on the other hand, the latter was intended the instruments were wills. In *Purcell v. Baskett,* 121 Kan. 678, 249 Pac. 671, it was stated:

"It is settled by statute and judicial precedent that a future interest in land may be created by deed (R. S. 67-205; *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953; *Brown v. Anderson County,* 100 Kan. 319, 164 Pac. 288; *Smith v. McHenry,* 111 Kan. 666, 207 Pac. 1108), but when a future estate is thus created the grantee actually does acquire an interest *in praesenti* with mere postponement of possession or enjoyment." (p. 680.)

In *Imthurn v. Martin,* 150 Kan. 906, 96 P. 2d 860, a contract involved this identical question of law. We shall not restate the provisions of that contract here. Its terms are summarized in syllabus paragraph 1 of that opinion. In the course of the opinion we said:

"Our attention is also directed to authorities bearing on whether the contract provided for disposition of property at the death of Bessie Wolcott, and if it be held to be testamentary, that it is invalid because not executed in the manner provided by statute for making a will. G. S. 1935, 22-201 *et seq.* Although we have many decisions dealing with situations arising under various circumstances, we shall not review them but shall call attention to two which state the basic rule.

"In *Reed, Ex'r., v. Hazelton,* 37 Kan. 321, 325, 15 Pac. 180, it was said:

" 'If an instrument of writing passes a present interest in real estate, although the right to its possession and enjoyment may not accrue until some

future time, it is a deed or contract, but if the instrument does not pass an interest or right until the death of the maker, it is a will, or testamentary paper.' (p. 325.)

"The test for determining was laid down in *Powers v. Scharling*, 64 Kan. 339, 343, 67 Pac. 820, in the following language:

" 'In determining whether an instrument be a deed or will, the question is, Did the maker intend to convey any estate or interest whatever to vest before his death, and upon the execution of the paper? Or, on the other hand, did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter, a will.' (p. 343.)

"We think that the above contract, tested under the above rules, shows a situation where the right of Mr. Martin to receive any residue that might remain did not vest until the death of Bessie Wolcott. The instrument was testamentary in character, but was not sufficient as a will." (p. 911.)

We think the same conclusion must be reached in the instant case. Where the expressed meaning (of a recital in a deed) is plain on the face of the instrument it will control. (*Purcell v. Baskett,* supra, p. 680.) So here it is clear the grantor warranted title to the property conveyed only on the date of delivery. She expressly wrote into the body of the deeds a provision which fixed the date she intended delivery to be effectual. That date was at her death. To make doubly sure to express that intention she also wrote the same provision on the back of each deed. We interpret the instruments which the grantees had in their possession to mean that the grantor intended title to the grantees should not pass until the death of the grantor. The instruments being testamentary in character but not having been executed in accordance with the law pertaining to wills cannot stand as such.

The judgment of the district court is reversed with directions to enter judgment in accordance with the views herein expressed.