No. 36,680

In the Matter of the Estate of Maggie Z. Smith, Deceased (CLAUDE DRESSLER et al., *Appellants,* v. THE ALUMNI ASSOCIATION OF THE KANSAS STATE AGRICULTURAL COLLEGE and SAM DEAL, Executor of the Estate of Maggie Z. Smith, Deceased, *Appellees*).

(174 P. 2d 1012)

Opinion filed December 7, 1946.

*Donald C. Martindell,* of Hutchinson, argued the cause, and *William D. P. Carey, Wesley E. Brown, Edward B. Brabets, Lee Hornbaker,* all of Hutchinson, and *Bronce Jackson,* of Lyons, were with him on the briefs for the appellants.

*L. E. Quinlan,* of Lyons, and *Hal E. Harlan,* of Manhattan, argued the cause, and *A. M. Johnston,* of Manhattan, was with them on the briefs for appellee Alumni Association of the Kansas State Agricultural College.

No appearance made for appellee Sam Deal, Executor.

The opinion of the court was delivered by

SMITH, J.: This action originated in the probate court when the executor of an estate filed a supplementary report in which he asked the probate court to determine the effect of a contract he had discovered amongst the papers of Maggie Z. Smith, deceased. On motion of an interested party the matter was transferred to the district court. In that court the Alumni Association of The Kansas State College, of Manhattan, Kan., filed what amounted to a petition for specific performance of the contract. Issues were joined by the answer of some of the legatees and devisees of Mag-

gie's will, the cause tried and judgment entered decreeing specific performance as prayed for by the association. The legatees and devisees have appealed.

The essential facts are admitted. Maggie Z. Smith was the only child of Caleb R. Davis and Mrs. Davis, pioneer citizens of Rice county. She was their only heir and inherited the land in question from them. She was the wife of John S. Smith, who died in 1934. She died July 3, 1945. She and her husband had no children.

On January 10, 1929, Maggie and her husband entered into the contract with the Alumni Association, which is the subject of this action. That contract provided in the first paragraph as follows:

"In consideration of the stipulation and agreements hereinafter enumerated to be performed by the party of the second part, the parties of the first part agree to give to the party of the second part such property and (or) such sums of money as they shall see fit at such times as they shall see fit including the following described real estate in Rice County, Kansas, to wit:"

After a description of the real estate the contract provided as follows:

". . . deeds to which have been executed in favor of said party of the second part and placed in escrow with the Citizens State Bank of Little River, Kansas, said deeds to be delivered to the duly elected and qualified president of the said Alumni Association of the Kansas State Agricultural College by said bank immediately upon the death of Maggie Z. Smith, one of the parties of the first part, provided that the parties of the first part or either of them shall have the right to withdraw said deed or deeds from escrow at any time that they may see fit during the lifetime of said Maggie Z. Smith, and said Citizens State Bank is hereby instructed to deliver said deed or deeds to Maggie Z. Smith in the event that at any time she may demand it.

"The party of the second part hereby agrees that such sums of money and the proceeds from the sale of such property as may be transferred to it by the parties of the first part shall be managed, loaned and expended in its discretion to aid worthy students in obtaining education at the Kansas State Agricultural College.

"The party of the second part further agrees that, for the aforementioned purpose, it will organize and maintain, in such form as to it in the exercise of its discretion may seem from time to time necessary or desirable, an organization to be known and administered as and in the name of the C. R. Davis Memorial Fund."

The deeds to which reference is made in the above-mentioned contract were found after Maggie's death in the hands of an officer of the bank named as escrow holder. These deeds, three in number, were in an envelope along with the contract. They were duly executed by Maggie and her husband, but the name of the grantee

was not written in at the place provided. The record discloses that sometime subsequent to the execution of the contract and deeds Maggie sold and gave a warranty deed to eighty acres of the real estate in question. No question is raised about her right to do this. Only 580 acres are involved here.

Maggie died testate. She made her will on January 20, 1938, subsequent to the execution of the contract and deeds, to which reference has been made. Besides some specific bequests she provided that the residue should go to eleven named persons. Appellants are those persons. The land with which we are concerned was not mentioned in this will. There is no dispute about the above facts.

In the district court the alumni association filed a petition. It alleged that Maggie inherited the property from her father, a pioneer farmer, and that prior to January 16, 1929, Maggie and her husband had planned to establish an endowment fund in memory of Maggie's father; that shortly before that date they called the officers of the association to their house and told them they desired to establish such a fund and they would establish it provided the association would create and maintain it in the name of "The C. R. Davis Memorial Fund"; that all parties did enter into the contract already mentioned; that on the date the contract was executed Maggie and her husband performed it by executing warranty deeds to the land in question with the petitioner named as grantee and placing them in a bank with instructions to comply with the contract; that as provided in the contract Maggie did remove from the bank one deed covering a described eighty acres and selected the property contracted to be conveyed by leaving the remaining deeds in the bank; that in compliance with the terms of the contract petitioner had made the necessary preparations and was ready, willing and able to perform all the conditions of the contract.

The petition prayed for specific performance of the contract and that the association be adjudged to be the absolute owner in fee simple of the land and that the escrow holder be ordered to forthwith deliver to petitioner all the deeds.

The legatees and devisees named in the will filed a motion for judgment on the pleadings in which they set out various legal reasons why the petitioner should not have the relief asked. This motion was denied.

The devisees then filed an answer. In this answer they admitted

that Maggie and her husband made the contract and signed the deeds; that they owned the land and that subsequent to the execution of the deeds and contract Maggie had conveyed eighty acres of the land to a third party.

They denied that either Maggie or her husband had performed the contract, or had contracted by its terms to convey any land to the association or that they ever made any selection of property or that Maggie ever removed any deed from the escrow holder. They also denied that the association had authority under its charter to enter into such a contract.

The answer then alleged that the contract showed on its face that the association had no interest in the property; the instrument contained no words of conveyance; there was no delivery of the deeds and the grantors retained full control over them until the death of Maggie; that from the time of their signature until the day of Maggie's death, Maggie or her husband retained full control over the property described in them by way of executing oil leases and collecting rents and royalties; that the so-called contract was void for want of mutuality and for want of consideration; that it was testamentary in character and was not executed in the manner prescribed by statute for testamentary instruments; that Maggie's will did not mention either the land in question or the alumni association; that she died seized of the property.

These devisees prayed the contract be held void; that the real estate in question be adjudged part of Maggie's estate and that the association be barred of any right, title or interest in the land.

With the issues thus drawn the case was tried by the court. Counsel for the association made a somewhat lengthy opening statement. A portion of it with which we are concerned is as follows:

"Yes, sir, that's right. In conclusion I just want to say to your honor or tell your honor exactly what our position is in this case. This is a suit on a contract and we are alleging and contending that there was a valid consideration for the contract; that Mrs. Smith, after the execution of the contract, made a selection of the property that was to go to the alumni association under the terms of the contract."

The trial court found that the alumni association was the owner of the fee simple title to the real estate in question; that it was no part of Maggie's estate and the residuary devisees under her will had no interest in it. Judgment was entered accordingly and motion for a new trial was overruled. Hence this appeal.

The cause was tried in the court below and is argued by appellees here on the theory that it was brought to enforce the contract. Appellees take the position the contract was for a valuable consideration; that the only uncertainty about it was how much land would pass at the death of Maggie and when she died leaving deeds for 550 acres of land in the hands of the escrow holder she thereby selected that much land to pass by the contract. The trial court in entering judgment for the appellees remarked that our holding in *Southwestern College v. Hawley*, 144 Kan. 652, 653, 62 P. 2d 850, compelled such a holding. Appellees rely in a large measure on that opinion. On account of the conclusion we have come to in this appeal we shall first discuss what we deem to be the distinction between that case and this one. That case involved a subscription to the endowment fund of a college. The instrument upon which the claim was filed was as follows:

"Form 4 - Estate Pledge

"FORTIETH ANNIVERSARY ADVANCE

"$1,340,000                                    $1,340,000

"SOUTHWESTERN COLLEGE

"Dated at Arkansas City, Ks., 12/19/25.

"In consideration of the importance of Southwestern College as an institution of higher Christian learning, its need for endowment and sustentation, and in consideration of pledges being made by others for the same purposes, I hereby pledge and promise to pay to the Southwestern College, Winfield, Kansas, the sum of one thousand and no/100 dollars ($1,000), which sum shall become due upon my decease and shall be payable out of my estate.

"This pledge shall bear no interest and shall be paid out of my interest in the west half of the southeast quarter of section nine, township thirty-five, range four, Cowley county, Ks.

"(Signed) C. LUNDSTROM.

"Witness: W. C. ROBINSON, JR., Arkansas City, Kansas.
"Witness: R. A. DADISMAN, Winfield, Kansas.

"(Notation on Back)

"It is agreed by the Southwestern College that at any time the donor wishes to take up this pledge by the payment of cash it will [be] and is to him an annuity bond bearing interest at the rate of one half of one percent above his age at the time of issuing said bond.

"SOUTHWESTERN COLLEGE,

"By R. A. DADISMAN, Field Secretary."

It was placed with an escrow agent and was in its hands when the signer died. We held it to be a valid claim against his estate.

It will be noted that the above instrument was in the form of a promissory note. As far as the instrument itself was concerned it was an unconditional promise to pay a definite amount. The only detail left uncertain was the date when it should become payable. This was certain to occur some time, the exact date only was uncertain. It is true the escrow holder was permitted to testify that the maker of the note had, when he delivered the note to him, reserved the right at any time he saw fit to reclaim it. This was a matter between the signer of the note and the escrow holder. As far as the instrument itself was concerned it was a definite promise to pay a definite amount.

Such cannot be said, however, of the contract here. The first clause was no more than a promise to give to the association at some indefinite time in the future, to be fixed as the promisor saw fit, such property or sums of money as the promisor should see fit.

After the description of the property, we find the provision about depositing the deeds. Then following the provision to the effect that once the deeds were deposited either Maggie or her husband had the right to withdraw any or all of them at any time they saw fit during Maggie's life. Thus we see the right of withdrawal was a part of this instrument while the withdrawal features in the Southwestern College case only appeared in the instructions of the maker of the note to the escrow holder. We examined the contract in this case carefully and we find no provision that actually bound Maggie and her husband to do anything beyond what they wished to do and could have done without any contract. As a matter of fact such seems to have been the practical interpretation placed on the contract by the parties since Maggie did convey away one eighty which was included in the land covered by the contract, and a deed to which was included among the deeds deposited with the escrow holder. She seems not to have had any idea but that she could convey any of this land she saw fit.

Since appellees insist that this is an action to enforce a written contract to convey land they must look to its provisions for any rights they may have. If we construe the contract and the deeds and the escrow agreement together, we find that Maggie and her husband never did part with control over the deeds. The plain language of the contract as well as the conduct of the parties show

there was never any such intention on their part. Under such circumstances even had the name of the officers of the association been written in the deeds as grantees no title would have passed. See *Sample v. Reed,* 130 Kan. 524, 287 Pac. 614; also, *Roberts v. McCoach,* 145 Kan. 407, 65 P. 2d 289, and *Hush v. Reeder,* 150 Kan. 567, 95 P. 2d 313.

Once we reach the conclusion that the giving of the deeds, together with the contract, did not entitle appellees to specific performance, we must consider the question of whether the contract by itself is enforceable. It provided that the parties of the first part "agree to give." The question arises at what time in the future was the gift to take place. Clearly at the death of Maggie. No title was to pass until then. In *Lowry v. Lowry,* 160 Kan. 11, 159 P. 2d 411, in syllabus paragraphs one and two we held:

"1. If from the terms of a written instrument, designated as a warranty deed, it appears the maker intended to immediately vest title to real property, therein described, in the grantee, the instrument is a deed; but if its terms disclose the grantor intended to vest title in the grantee only at the death of the grantor the instrument is testamentary in character and can be valid only if executed in the manner provided by statute for making a will.

"2. Two instruments, designated as warranty deeds, examined, and held: They disclose the grantor warranted title to the property described therein only as of the date of delivery; the grantor expressly specified delivery thereof was to be at her death and the instruments were testamentary in character."

In the opinion we said:

"All parties agree the instruments were not executed in accordance with the law of wills but were in the form of deeds. Were the instruments testamentary in character? That depends upon whether the interest they conveyed to the grantees was intended to vest presently or only after the death of the grantor. If the former was intended the instruments were deeds. If, on the other hand, the latter was intended the instruments were wills." (p. 14.)

See, also, *Imthurm v. Martin,* 150 Kan. 906, 96 P. 2d 860. No one argues that the contract here was executed as a will should have been.

If by depositing the deeds with the escrow holder the Smiths intended to pass a present interest in the land to the association, what they actually did fell far short of accomplishing that, as we have already demonstrated.

Appellees argue that this contract created an educational trust and point out that such trusts have always been favorites of the law. It asks us to carry out what was the manifest intention of

the Smiths. It clearly was the intention of the Smiths to retain title to this land and control of the deeds until Maggie's death. Under the circumstances we must pass on the matter in the light of what the parties actually did rather than in the light of what it appears they might have intended. It follows that the real estate in question was part of Maggie's estate when she died.

The judgment of the trial court is reversed with directions to enter judgment in accordance with the views expressed herein.