No. 47,329

GALEN TRUAX and CHARLES STUTZMAN, Co-executors of the Will of
LENA H. HOGAN, *Appellees,* v. SOUTHWESTERN COLLEGE, Oklahoma
City, Okla.; PENTECOSTAL HOLINESS CHURCH, Dodge City, Kan.;
KANSAS CONFERENCE OF THE PENTECOSTAL HOLINESS CHURCH,
*Appellants,* and FIRST FEDERAL SAVINGS & LOAN ASSN., Dodge City,
Kansas, *Appellee.*

(522 P. 2d 412)

Opinion filed
May 11, 1974.

*Robert M. Baker,* of Ashland, was on the brief for the appellants.

Jay Don Reynolds, of Cimarron, argued the cause and was on the brief for the appellees Galen Truax and Charles Stutzman.

No appearance for appellee First Federal Savings & Loan Association.

The opinion of the court was delivered by

HARMAN, C.: This is a suit by the executors of the estate of Lena H. Hogan, deceased, to determine the ownership of four savings accounts created by the decedent in her lifetime. Defendants in the case are the savings and loan association (whose role in the action is that of stakeholder only) and church or church-related institutions, each of which claims the proceeds of an account by reason of having been named as a payee upon the death of Mrs. Hogan. Trial to the court resulted in judgment for the executors and the church groups have appealed.

The evidence before the trial court consisted of a written stipulation of facts plus testimony as to which there is no dispute.

On August 18, 1964, Mrs. Hogan consulted with Mrs. Neva Martin, president of the defendant First Federal Savings and Loan Association of Dodge City, Kansas, about establishing the accounts in question and on that date established the first one (Mrs. Martin died prior to trial). This account, in the amount of $2,300, was evidenced by a passbook in printed form which certified that Lena. H. Hogan held an account representing share interests in the association subject to its charter, bylaws, etc. Underneath Mrs. Hogan's name on the printed form the following notation appeared: "Payable on death to Pentecostal Holiness Conference Board (for Missionary work)." At the same time a signature card in the name of Lena H. Hogan was executed, which card bore the same account number and the same payable on death notation as the passbook. On the space provided for the account holder's signature the signature of Lena H. Hogan alone appeared. The signature card bore a printed provision on its reverse side appropriate for the establishment of a joint tenancy account but this side was never signed and the parties agree there was never any attempt to establish such an account.

Mrs. Hogan established three more savings accounts with the association. Each was made upon her direct order to the head teller. Each passbook and signature card was in the same form as the first account except as to the payee on death notation. The second such account was established by Mrs. Hogan September 2,

1964, in the amount of $1,500. The passbook and signature card bore the typed notation after Mrs. Hogan's name: "Payable on death to: Southwestern College Oklahoma City, Okla."

The third account, established October 1, 1964, in the amount of $3,300, carried this notation: "Payable on death to the Pentecostal Holiness Church solely for payment of the Church Mortgage".

The last account was established July 2, 1965, in the initial amount of $1,500. On February 2, 1971, the sum of $800.00 was added to it. The passbook and signature card bore this notation: "Payable on death to Pentecostal Holiness Conference Board to be divided equally between the Orphanage Childrens Home & Old Folks Home".

During Mrs. Hogan's lifetime the savings association paid to her periodically the accumulated interest on each account.

The Kansas Conference of the Pentecostal Holiness Church is a non-profit Kansas corporation which is engaged in missionary work, maintains an orphanage children's home, an old folks' home, and operates a college under the name of Southwestern College of Oklahoma City as a separate corporation. The Pentecostal Holiness Church, 302 E. Vine, Dodge City, Kansas, is a Kansas corporation and has a mortgage in excess of $3,300.

On February 25, 1971, Mrs. Hogan executed her last will and testament. The will contained several specific devises and bequests, including a devise of a one-half interest in her Dodge City residence to the Pentecostal Holiness Church of Dodge City and a bequest of a Dodge City bank account to the building fund of the Kansas Conference of Pentecostal Holiness Churches. The will did not mention Mrs. Hogan's savings accounts. It concluded with a residuary clause naming the following legatees:

"Reverend C. W. Burpo, Mesa, Arizona; Oral Roberts Evangelistic Association, Tulsa, Oklahoma; The Billy Graham Evangelistic Association, Minneapolis, Minnesota; Reverend Billy James Hargis, Tulsa, Oklahoma; Reverend J. Harold Smith, Dallas, Texas."

Lena H. Hogan died May 31, 1971, and her will was duly admitted to probate in the probate court of Ford county, Kansas.

Mrs. Hogan's sister, Grace Truax, died February 6, 1972. Thereafter the four passbooks evidencing the accounts in question here were found in the safety deposit box of Grace Truax.

In addition to the facts already stated the parties' stipulation of evidence included the following:

"(26) That at all times during the lifetime of the said Lena Hogan that the aforedescribed accounts marked plaintiffs' exhibits 1, 2, 3 & 4 were in existence, the said Lena Hogan was empowered and able to increase, diminish or destroy or withdraw any or all parts of said accounts at her pleasure.

"(27) That the defendant, Lena Hogan, was at all times totally aware of such accounts and arrangements as set forth as plaintiffs' exhibits 1, 2, 3 & 4 and that she was in full possession of her mental and physical faculties at all times herein and when she made her last will and testament on 25 February 1971.

. . . . . . . . . . . . . .

"(31) That according to the bylaws of the First Federal Savings & Loan Assn., the accounts in question would not be paid without presentation of the passbooks, known as plaintiffs' exhibits 1, 2, 3 & 4.

"(32) That in addition to the passbooks, an application for withdrawal signed by some proper person and a presentation of the death certificate of the original signer, if the original signer be deceased, would be necessary to withdraw money from any of the accounts."

When the defendant savings association declined to pay to the executors of Mrs. Hogan's estate the proceeds of the four savings accounts the latter instituted this action, claiming them as assets of the estate.

The defendant church groups filed an answer claiming the accounts. The parties now agree that under the pleadings the issues in the case are as follows:

"Did the establishment of the accounts in question by decedent Lena H. Hogan in the First Federal Savings & Loan Assn., create:

"a. A third party beneficiary contract for the benefit of the defendant church groups;

"b. An escrow for the benefit of the defendant church groups;

"c. An *inter vivos* gift for the benefit of the defendant church groups;

"d. A trust for the benefit of the defendant church groups so as to vest the final ownership of such accounts according to the designations upon the account cards and passbooks, or were the efforts of Lena Hogan testamentary in nature and void for want of the proper statutory form?"

The trial court rendered its decision in a memorandum opinion which, after a recitation of the background, stated:

"The court finds that the so-called signature cards executed as to each of the above designated accounts were not executed as joint tenancy accounts between Lena H. Hogan and the parties named in the 'death payable' clause.

"That Lena H. Hogan retained ownership and control of and over the accounts and the funds represented thereby during her lifetime, and made no delivery of the funds or accounts.

"The account signature cards of the respective accounts do not meet the requirements for a testamentary disposition of the funds represented by said accounts.

"The respective accounts were not set up as escrow accounts.

"The evidence does not support the theory of defendants that there was an inter vivos gift of the funds represented by the respective accounts.

"The evidence does not support the theory of defendants as to parol trust.

"The court concludes the accounts above described and the funds represented thereby constitute assets of the estate of Lena H. Hogan, deceased.

"The defendant First Federal Savings and Loan Association is directed to honor the request of plaintiffs for payment of funds represented by said accounts."

Upon appeal the church groups renew their contention that Mrs. Hogan's agreements with the savings association constituted either *inter vivos* gifts, escrow accounts, executed contracts or trusts upon their behalf.

The parties agree there was a contractual obligation undertaken by the savings association upon the execution of the savings accounts but they differ as to its nature and as to whom the accounts are now payable. Although a savings and loan association is not to be equated in all respects to a bank, we think that an account in a savings and loan association, like a bank deposit, is subject to any agreement which the depositor and the association may make as to it, so long as the rights of third parties are not injuriously affected and no statute or other rule of law is violated (see 5A Michie on Banks and Banking, § 40).

Appellants contend first the trial court erred in finding the decedent retained ownership and control of the accounts during her lifetime and that she made no delivery of the accounts or funds. The argument is that Mrs. Hogan in her lifetime surrendered possession of the passbooks to her sister, Grace Truax, and she thereby relinquished all control over the accounts. Unfortunately for appellants both Mrs. Hogan and Grace Truax were deceased at the time of trial and there was no evidence whatsoever as to when and under what circumstances the passbooks came to be in Grace's safety deposit box. The parties expressly stipulated that Mrs. Hogan was during her lifetime empowered and able to diminish, destroy or withdraw any or all parts of the accounts at her pleasure, and we see nothing wrong with the findings complained of.

The requisites of a valid *inter vivos* gift were stated in *In re Estate of Matthews*, 208 Kan. 492, 493 P. 2d 555, as follows:

"To establish a valid gift *inter vivos*, there must be (*a*) an intention to make a gift; (*b*) a delivery by the donor to the donee; and (*c*) an acceptance by the donee. The gift must be absolute and irrevocable." (Syl. ¶ 6.)

Appellants rely on the following language quoted in *Stevenson v. Hunter*, 131 Kan. 750, 293 Pac. 500:

" 'Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift, which, in such case, is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee. And the validity of the gift is not affected by the fact that the trustee is not to deliver the property to the donee until after the donor's death.' " (p. 755.)

The burden of proving that a gift was made, including the existence of all the elements necessary to its validity, is upon the party asserting the gift (38 Am. Jur. 2d, Gifts, § 92, p. 890). Here the stipulation negates relinquishment of dominion and control over the accounts by Mrs. Hogan, delivery of the passbooks to appellants or their agents was not shown and the requirement that the alleged gift be absolute and irrevocable is lacking. In *Waitman v. Waitman*, 505 P. 2d 171 (Okla.) the depositor opened a savings account with a notation to pay the account on her death to her brother. In denying the brother's claim to the account after the depositor's death the Oklahoma supreme court stated:

"The evidence discloses that there was no valid gift inter vivos to Albert Waitman of any present interest (joint or otherwise) in this account.

"The evidence also discloses that Daisy Waitman's attempted transfer, to Albert Waitman, of the entire interest in any balance remaining on deposit at the time of her death was intended to become effective upon, and only upon, her death. It was in the nature of a testamentary disposition and, not having been made in the manner prescribed by statute for the execution of wills, was invalid and ineffective." (p. 175.)

To the same effect see also *Tonsic v. Holub*, 13 Ohio App. 2d 195, 235 N. E. 2d 239; and *Tucker v. Simrow*, 248 Wis. 143, 21 N. W. 2d 252.

The trial court correctly ruled that an *inter vivos* gift was not shown.

Appellants assert they are entitled to the proceeds of the accounts on the theory of contract, either as third parties beneficiary or under an escrow agreement. Appellees respond that the typewritten instructions on the signature cards and passbooks were merely abortive attempts at testamentary disposition of the proceeds of the accounts.

K. S. A. 59-606 provides:

"Every will, except an oral will as provided in section 44 [59-608], shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same."

This court has never sanctioned forthright violation of our statute of wills. Neither the passbooks nor the signature cards were executed in accordance with it. In *Imthurn v. Martin,* 150 Kan. 906, 96 P. 2d 860, a contract was executed providing that M would take care of W from funds provided by W and further that if W should die before the funds were exhausted the remaining property would go to M. This court held respecting the contract:

"If . . . it appears the maker intended to immediately vest the title to the property mentioned in the other party, then the instrument is a deed or bill of sale, as the case may be; but if it appears that the title to the property vests only upon decease of the maker, the instrument is testamentary in character and is only good as a will if executed in accordance with the statute." (Syl. ¶ 2.)

In *Bowen, Administrator v. Hathaway,* 202 Kan. 107, 446 P. 2d 723, ownership of the proceeds of a bank checking account was in dispute. The deceased depositor had executed a power of attorney giving Hathaway authorization to deposit money to his bank account, write checks on it and pay his bills. Thereafter the decedent had signed a signature card entitling the survivor to any balance in the account. The power of attorney was revoked but Hathaway's name was left on the account. This court remarked that neither the depositor nor the banker understood the incidents of ownership and legal implications arising from the two party bank account and further that:

"The desire expressed by Mr. Craig that Elma Hathaway have the funds on his death was not legally sufficient to effect transfer of title at his death. It was not sufficient as a gift (*Hudson, Administrator v. Tucker,* 188 Kan. 202, 361 P. 2d 878) and it was not sufficient as a testamentary disposition. (K. S. A. 59-606.)" (p. 115.)

In *In re Estate of Mathews,* supra, we said:

"The mere expression of a desire on the part of the owner of a two-party bank account that the survivor should have the funds upon his death is not legally sufficient to effect a transfer of title at his death, nor is it sufficient as a gift." (Syl. ¶ 7.)

Appellants rely on *In re Estate of Smith,* 199 Kan. 89, 427 P. 2d 443, for the proposition that a third party beneficiary contract in

their favor was executed between Mrs. Hogan and the savings association. In *Smith*, a depositor changed her individual savings account to a joint account with right of survivorship with her son as the joint tenant. In holding that the son was entitled to the balance of the account upon his mother's death this court stated:

"The legal significance of the contract entered into by Rachel and the bank was the creation of a joint tenancy bank savings account with the right of survivorship wherein Floyd was a third party donee beneficiary. In *Goeken v. Bank*, 104 Kan. 370, 179 Pac. 321, it was held:

" 'A person may avail himself of a promise made by a second party to a third for the benefit of the first, although the latter was not a party to it and had no knowledge of it when made.' (Syl. ¶ 2.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The contract being beneficial to Floyd, his acceptance thereof may be presumed." (p. 93.)

*Smith* is not helpful to appellants' cause because there a joint tenancy account was actually created—a feature concededly not present here.

In *Blais v. Colebrook Savings Bank*, 107 N. H. 300, 220 A. 2d 763, the facts were very similar to those at bar. The depositor maintained a savings account in his name. At his direction a bank employee typed on the ledger card and the signature card for the account a notation "payable on death" to a certain person. The passbook, which the depositor retained in his possession, bore a similar notation. After the depositor's death the person named in the notation claimed the account. The New Hampshire supreme court described the account as one maintained in the name of the depositor alone, payable to him alone during his lifetime, and at his death to another and held that a joint account was not created and further ". . . the notation endorsed upon the ledger, the signature card, and the passbook, was an invalid 'attempt to make a testamentary disposition.' " (p. 302.)

The requisites of an instrument to constitute an escrow agreement were stated in *Wilson v. Woolverton*, 137 Kan. 663, 21 P. 2d 313, thus:

"In order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject matter, and a consideration, but the parties must actually contract and the deposit must be absolute and beyond the control of the depositor." (Syl. ¶ 1.)

However, the requirement that the deposit be absolute was relaxed somewhat under the particular facts in *Southwestern College*

*v. Hawley,* 144 Kan. 652, 62 P. 2d 850, a case strongly relied upon by appellants here, in which it was stated:

"Generally, to constitute an escrow, the instrument must pass unconditionally from the control of the depositor. This rule is not, however, so arbitrary and inflexible as to defeat the intention of parties engaged in worthy enterprises." (p. 655.)

In *Southwestern* a written subscription to a college was placed with the president of a bank with directions that it be held for the depositor's instructions and further that on depositor's death it should be delivered to the college. This court upheld the college's claim to the instrument, primarily upon the theory that such an agreement imparts consideration and public policy favors such arrangements. However, the impact of the decision must be regarded as having been seriously eroded in *In re Estate of Smith,* 162 Kan. 215, 174 P. 2d 1012. In this latter case a decedent agreed to make a gift of realty to the alumni association of Kansas State Agricultural College. She placed deeds to the land in escrow but retained control over and had a right to withdraw them at any time before her death. She did not withdraw the deeds prior to her death. The trial court ruled that *Southwestern* compelled judgment for the alumni association but this court reversed holding that the contract arrangement was testamentary in character and ineffective to pass title. In distinguishing *Southwestern* this statement was made:

"It will be noted that the above instrument [in *Southwestern*] was in the form of a promissory note. As far as the instrument itself was concerned it was an unconditional promise to pay a definite amount." (p. 220.)

Certainly a subscription agreement is distinguishable from a savings account so far as the liability of a depositor to a third party is concerned.

In *Reno County Community Hospital Ass'n v. Woodford Estate,* 171 Kan. 97, 229 P. 2d 730, this statement appears:

"In some of the above cases mention is made of the rule that benefits to charitable uses have always been favorites of the law, and that courts have been liberal in the construction of any instruments conferring such benefits because they are calculated to foster and encourage charities, whether religious, educational or for the advancement of the public good. While our consideration of the evidence is measured by the above rule, it is always to be remembered that the facts must make it appear that the donor of such benefits not only had the intention to give but translated that intention by effective action, or stated another way, *intention alone is not sufficient, the donor must have so acted that he bound himself or his estate.*" (p. 104.) (Emphasis supplied.)

We think the trial court correctly denied appellants' claims to the savings accounts based on contractual theories.

In *Shumway v. Shumway*, 141 Kan. 835, 44 P. 2d 247, we quoted approvingly the following respecting creation of a trust:

". . . to constitute an express trust there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created, accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a *cestui que trust* or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another. . . ." (p. 837.)

In 54 Am. Jur., Trusts, § 33, this rule is stated:

"Intention to create a trust and manifestation thereof, with reasonable certainty, are essential to the creation and existence of a trust. This means an intention specifically to create a trust and not to do something else, as to create a gift or to make a transfer of property." (pp. 44-45.)

And in *Mathews, Administrator v. Savage*, 195 Kan. 501, 407 P. 2d 559, we held:

"A fundamental essential of any trust is a separation of the legal estate from the equitable estate and the beneficial enjoyment." (Syl. ¶ 1.)

Here, again, it must be remembered Mrs. Hogan during her lifetime retained complete dominion and control over the savings accounts, including the right to destroy them. There was never any formal declaration of trust made by her nor was there other evidence of her intent to create a trust. A similar situation was presented in *Young v. McCoy*, 152 Neb. 138, 40 N. W. 2d 540, wherein the answer filed by a person named as payee of a bank deposit upon the death of the depositor, stated:

" 'This defendant further alleges that the said Arthur E. Young, * * * deposited in said State Bank of Elk Creek the sum of about $8,000.00 instructing Rudolph Kavanda the cashier of said bank who had charge of the records of said bank, to enter on the records of the bank such deposit so that any part thereof or the increase thereof remaining at the time of his death should be paid to the defendant herein Edyth L. McCoy; that in conformity with said request of the said Arthur E. Young, said cashier with the knowledge and consent of and in the presence of the said Arthur E. Young entered on the proper books of said bank said deposit as follows: "A. E. Young P. O. D. Mrs. Edith L. McCoy." ' " (p. 144.)

The court commented on this answer as follows:

"This pleading shows on its face that a valid trust was not created for the reason that no interest passed to the purported beneficiary prior to the death of the settlor. The general rule is: 'Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of the settlor, the intended trust is a testamentary trust and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.' Restatement, Trusts, § 56, p. 167." (p. 144.)

The general rule is also summarized in 57 Am. Jur., Wills, § 45, thus:

". . . [T]he transfer of a bank account, to take effect at the death of the depositor, who retains control during his life, is testamentary in character and void if not executed as a will, whether the intention of the depositor is to provide for a trust or to make a direct gift." (p. 70.)

The trial court correctly concluded the evidence failed to establish existence of a trust. Overall it clearly appears the attempted dispositions were testamentary in character and hence invalid because they were not executed in compliance with K. S. A. 59-606.

Judgment affirmed.

APPROVED BY THE COURT.