ALMEDIA C. HAZLETON *et al.* V. JAMES G. REED *et al.*

INSTRUMENT, *Construed as a Will—Revocation.* It may be laid down as a general rule, that a written instrument which discloses the intention of the maker respecting the posthumous destination of his property, and which is not to operate until after his death, is testamentary in its character, and not a deed or contract, and may be revoked. (*Reed v. Hazleton,* 37 Kas. 321.)

*Error from Ottawa District Court.*

THE opinion states the material facts. Judgment for the defendants, on August 30, 1888. The plaintiffs, *Hazleton* and others, bring the case to this court.

*Garver & Bond,* for plaintiffs in error.

*W. E. Richards,* and *R. R. Rees,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought in the court below by the widow and minor children of John Hazleton, deceased, against James G. Reed, executor of the last will of Henry Ricket, deceased, and other parties, to enforce an alleged contract for the conveyance of certain real estate, executed on the 9th of March, 1883, by John Hazleton and Henry Ricket. Henry Ricket died on the 15th of September, 1883. John Hazleton died on the 9th of April, 1888. Upon the part of the plaintiffs it is claimed that, within the terms of the contract, Ricket was under obligation to make such provision by deed or will as would vest the title to the land in Hazleton; that the mere method or form adopted for this purpose cannot be held to be material, so that the intention of the parties is carried out; that it is the duty of the court to ascertain the intention of the parties with reference to the subject-matter of their agreement, when that can be done; that it was the intention of both Ricket and Hazleton that the land should become the property of the latter upon the former's death, and, therefore, that the district court erred

in sustaining the demurrer of the defendants, upon the ground that the petition did not state sufficient facts to constitute a cause of action. The written memorandum of the alleged contract was under consideration by this court in the case of *Reed v. Hazleton*, 37 Kas. 321. The facts of this case, together with a copy of the memorandum, are recited in full in the foregoing case, and need not be repeated here. In the former opinion handed down, it was said:

"Under the view which we take of this instrument, it will be unnecessary to examine the nature of a contract of bargain and sale, and a covenant to stand seized to the use of the grantee, which are discussed in the briefs filed in this action. We believe that it ought not to be placed in either of those classes of conveyances. . . . This article of agreement does not contain any of the usual operative words of a conveyance, with the possible exception of this clause: 'After the death of said Henry Ricket, of the first party, the right and title of the land in question shall vest in the said John Hazleton, of the second party.' That provision has no present operation, and could be revoked by the grantor at any time. It was testamentary. . . . The old man wisely kept possession and control of his home, to prepare for the possible change in the feelings of himself and Hazleton. Hazleton was not without recourse if he had performed services for which he had not been paid. He could have presented his claim against the estate, and the courts were open to aid him in obtaining his dues."

This disposes of the case. In *Turner v. Scott*, 51 Pa. St. 126, on the 22d of November, 1849, the father, John Scott, executed an instrument to his son, John W. Scott, purporting to convey his farm. The consideration for the execution of the instrument was the natural love and affection which the father had for his son, and also an agreement from the son that he was to live with the father, assist him in his work on the land, and maintain the mother during her natural life, if she survived her husband. The instrument contained the following provisions:

"Excepting and reserving, nevertheless, the entire use and possession of said premises unto the said John Scott, and his assigns, for and during the term of his natural life; and this

conveyance in no way to take effect until after the decease of the said John Scott, the grantor."

The son commenced to live with his father upon the land mentioned in the instrument, but after a time they quarreled. The father turned the son out, and on the 26th of February, 1861, made a will revoking the instrument executed to his son, which had been put upon record in the proper county. The chief justice of the court, in construing the written instrument from John Scott to his son, John W. Scott, said:

"We see nothing in the covenant of warranty to change our construction of the operative words of the grant. As these words were expressly limited to take effect only after the death of the grantor, they were necessarily revocable words. The doctrine of the cases is, that whatever the form of the instrument, if it vest no present interest, but only appoints what is to be done after the death of the maker, it is a testamentary instrument. It signifies nothing that the parties meant to make a deed instead of a will. If they have used language which the law holds to be testamentary, their intention is to be gathered from the legal import of the words they have employed, for all parties must be judged by the legal meaning of their words."

In *Leaver v. Gauss*, 17 N. W. Rep. 522, (Supreme Court of Iowa,) Leaver and wife executed to Gauss an instrument somewhat in the form of a deed, but it was provided therein that it should take effect only after the death of himself and wife. It is claimed that a valuable consideration was paid therefor by Gauss. One of the provisions of the written instrument was, "That the grantee is to take no estate during the lives of the grantors." In that case it was held that "A deed which recites, as one of its express provisions, that 'the grantee is to take no estate during the lives of the grantors,' is testamentary in its character, and, even if consideration was paid for it, may be revoked; no present estate subject to a life estate being created thereby."

In *Sperber v. Balster*, 66 Ga. 317, August Kohler executed a written instrument purporting to convey to Sophestina Sperber 650 acres of land, in consideration of services rendered

him by Sophestina as a nurse.   The instrument provided "that it should have full effect at his death."

The chief justice of the court said in that case: .

"It is wholly unnecessary to cite cases or invoke precedents in construing a paper like this, with a view to get at his meaning in respect to the time when he intended title, right, property, to pass out of himself into the object of his bounty.   It is enough to lay down the universal principle embodied in our code, § 2395, which is in these words: 'No particular form of words is necessary to constitute a will; and in all cases, to determine the character of an instrument, whether it is testamentary or not, the test is the intention of the maker from the whole instrument, read in the light of the surrounding circumstances.   If such intention be to convey a present estate, though the possession be postponed until after his death, the instrument is a deed; if the intention be to convey an interest accruing and having effect only after his death, it is a will.'   So reading this instrument, we construe it to be clearly a will; at all events, we all hold that such is the better legal view of it."

In *Kinnebrew v. Kinnebrew*, 35 Ala. 628, it was decided that—

"An instrument under seal, in form a deed of gift, by which the grantor, in consideration of the natural love and affection for the grantee, who was his grandson, and the present payment of $5 by the grantee, conveys to the latter, by the words 'do by these presents give and grant,' a slave, 'and $1,500 in cash, to be paid to him out of my (grantor's) estate at my death, by my executor or administrator,' *held*, a deed of gift as to the slave, but, as to the money, a purely-voluntary executory trust, which a court of equity would not enforce as an instrument *inter vivos*, but which was valid and operative as a will."

On the part of the plaintiffs, counsel refer with great confidence to the case of *Sutton v. Hayden*, 62 Mo. 101.   In that case, an arrangement was made by Mrs. Green with her brother to take his daughter, her own niece and godchild, and make her her heir at her (Mrs. Green's) death.   Subsequently, she promised that if the niece would come and live with her (Mrs. Green), and would be a daughter to her, and

nurse and take care of her the remainder of her life, all that she had should be hers (the niece's) at her (Mrs. Green's) death. The niece, Nancy A. Sutton, accepted the offer, and, relying upon the promises of her aunt, entered into her service, and continued with her about fifteen years. Mrs. Green failed to make any deed or will, and died intestate. In that case, the court held that a specific performance of the agreement of Mrs. Green could be compelled in equity, and that case is followed in several other Missouri cases. This case, however, is quite different from them in many particulars, especially in this, that Hazleton did not care for Ricket but a comparatively short time,—from the 1st of April, 1882, until the 15th of September, 1883, when Ricket died. By the express provisions of the article of agreement, Ricket was to retain during his life-time full and peaceable possession of all the land, and Hazleton was to live with Ricket—not Ricket with Hazleton—and Hazleton was to have no right or title in the land until after the death of Ricket. The provision in the article of agreement concerning the land in dispute was held by us in the former opinion to be testamentary only. We adhere to this ruling.

"It may be laid down as a general rule that an instrument in the form of a deed, signed, sealed and delivered as such, if it discloses the intention of the maker respecting the posthumous destination of his property, and is not to operate until after his death, is a will and not a deed." (19 Cent. L. J. 47.)

The difference between the cases cited in the former opinion, and the case of *Sutton v. Hayden,* supra, and other similar cases, is this: That in the former cases the courts seem to think that the grantees could have recovered for any claim or service which they could establish, without seeking relief in a court of equity. In the latter cases, the courts evidently proceeded upon the theory that the law furnishes no standard whereby the value of such services can be estimated, and equity can only make an approximation in that direction by decreeing the specific execution of the contract.

In the *Sutton v. Hayden* case, the niece gave for many years

to the discharge of her manifold cares, down to the period of her aunt's death, an unhesitating and unwearied tenderness and attention, which are only bestowed where affection prompts them.

In *Barkweather v. Young,* 4 Drew, 1, A, on the marriage of his daughter with B, agreed to leave his daughter an equal portion with his other children. Of course, in such a case, no compensation could be agreed upon or established, and equity alone could afford relief.

In *Rhodes v. Rhodes,* 3 Sandf. 279, the services therein contracted for could not and were not intended to be compensated with money, and were also incapable of computation by any pecuniary standard.

In this case, the services of Hazleton with Ricket were so brief—being only for about 18 months—that the value of the same could easily be computed.

The judgment of the district court will be affirmed.

All the Justices concurring.