No. 42,745

In the Matter of the Estate of Clarence W. Morrison, Deceased. ROGER W. WILLIAMS, Administrator of the Estate of Daisy M. Morrison, deceased (Petitioner), *Appellee,* v. CLARENCE W. MORRISON, JR., Executor of the Will of Clarence W. Morrison, deceased (Respondent), *Appellant.*

(371 P. 2d 171)

Opinion filed May 5, 1962.

*F. J. Leasure,* of El Dorado, was on the brief for the appellant.

*R. C. Woodward,* of El Dorado, argued the cause, and *H. Pauline Woodward,* of El Dorado, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: Clarence W. (C. W.) Morrison and Daisy M. Morrison were huband and wife. Each had grown children by a former marriage.

Clarence died testate in November, 1958. His will was admitted to probate. His son, the appellant here, was named and qualified as executor.

Daisy died intestate in May, 1960. Her son, the appellee here, was appointed administrator of her estate.

Unless otherwise indicated, Mr. and Mrs. Morrison will be referred to as Clarence and Daisy.

This appeal is an outgrowth of a dispute between the two estates concerning property rights.

Although variously stated by the parties in their briefs, there appear to be only three matters actually in controversy.

The first concerns the ownership and disposition of a joint bank account which was in the names of "C. W. Morrison or Daisy Morrison."

After hearing evidence concerning the opening of the account, the making of deposits therein, and other matters in connection therewith, the trial court concluded that Clarence and Daisy owned the account as tenants in common and adjusted the rights to the balance therein as of the date of Clarence's death accordingly.

From our review of the record we are of the opinion the trial court was correct in so holding.

The second question concerns the right of Daisy, as surviving spouse, to the statutory allowances following the death of Clarence.

As stated, Clarence died testate. Omitting formal parts, his will reads:

"ITEM TWO.

"I give, bequeath and devise to my wife, Daisy M. Morrison, the following described real estate in Butler County, Kansas, to-wit:

"Lot Eighteen (18) in Block Eleven (11) in the original town of Potwin, to be hers absolutely. The above described Lot adjoins our home in Potwin on Lot Seventeen (17), said home being the property of my said wife, Daisy

M. Morrison, and I suggest that if she is the owner of said property at the time of her death, that the same be sold by her heirs or the persons entitled thereto and the proceeds divided among said owners, rather than attempting to rent said property.

"ITEM THREE.

"All the rest, residue and remainder of my property, both real, personal and mixed, and wherever situated, I give, bequeath and devise the income therefrom to my said wife, Daisy M. Morrison, for the term of her natural life. She to have all the rents, income and profit from any real estate I may own and the income from any personal property. Upon the death of the said Daisy M. Morrison, I give, bequeath and devise said property to my children, Clarence W. Morrison, Jr. and Glenna Mae Wernli, in equal shares, to be theirs absolutely."

Daisy's written consent to the will reads:

"I, Daisy M. Morrison, have read the within Will of Clarence W. Morrison, my husband, and understanding the contents thereof and my rights thereunder and my rights under the laws of descent and distribution of the State of Kansas, hereby consent to the execution of said Will by the said Clarence W. Morrison and elect to take under said Last Will and Testament and accept the benefits thereof."

The executor of the will contended that by the language of her written consent Daisy waived her rights to statutory allowances and agreed to accept the devise and bequest in lieu of such rights.

The trial court held otherwise.

G. S. 1949, 59-403, so far as here material, reads:

"When a resident of the state dies, testate or intestate, the surviving spouse shall be allowed, for the benefit of such spouse . . . from the personal property of which the decedent was possessed or to which he was entitled at the time of death, the following: . . . (2) The sum of seven hundred fifty dollars, or other personal property at its appraised value in full or part payment thereof. . . ."

G. S. 1949, 59-404, reads:

"The surviving spouse, by electing to take under the will of the decedent or by consenting thereto, does *not* waive the homestead right nor the right to such *allowance,* unless it *clearly* appears from the will that the provision therein made for such spouse was intended to be *in lieu of such rights.*" (Our emphasis.)

By the provisions of this will Daisy was devised certain described real estate, absolutely, and was bequeathed during her lifetime the income from all other property owned by Clarence. Her consent stated that she understood the contents of the will, her rights thereunder, and her rights under the laws of *descent and distribution.* We find nothing in the language of the will or the consent which

makes it *clearly* appear that the provisions made for Daisy were intended to be in lieu of her rights to statutory allowances. The facts and language here involved are readily distinguishable from those in *In re Estate of Snyder,* 187 Kan. 373, 357 P. 2d 778. See also the several cases cited in that opinion and the case of *In re Estate of Hilliard,* 172 Kan. 552, 555, 556, 241 P. 2d 729, for a discussion of the question.

The trial court was correct in holding that Daisy was entitled to the statutory allowances in addition to the benefits under the will.

The other matter in controversy concerns the ownership, upon the death of Clarence, of a certain trust certificate.

On February 11, 1949, Clarence executed the following document:

"APPLICATION          ACCOUNT No. 171972

"I, the undersigned, hereby make application in the amount of $1,000.00 tendered herewith for shares of Capital Stock of Investors Mutual Inc. at the public offering price of such shares determined in the manner described in the Prospectus.

"A certificate for such shares shall be issued as directed below:
"INDIVIDUAL

"(1)  Mr. C. W. Morrison . . . . . . . . . . . . . . . .  . . . . . .  . . . . . . . . . . Age 64
as TRUSTEE for

"(2)  Daisy M. Morrison . . . .  . . . . . .  . .  . .  . . . . .  . . . .   . . . Age 62

"All communications from the Company shall be sent to the person in (1) above at the following address:

"Potwin, Butler County, Kansas

"Signed at Potwin, Kansas, this 11th day of February, 1949.

C. W. MORRISON,
Signature of Applicant

LAWRENCE J. COLLIER,
Signature of bonded representative
of Investors Syndicate, Distributor.

"DECLARATION OF TRUST—REVOCABLE.

No. 171972

"I, the undersigned, having purchased or declared my intention to purchase certain shares of capital stock of Investors Mutual Inc. (the Company), and having directed that the certificate for said stock be issued in my name as trustee for Mrs. Daisy M. Morrison, as beneficiary, whose address is Potwin, Kansas under this Declaration of Trust, DO HEREBY DECLARE that the terms and conditions upon which I shall hold said stock in trust and any additional stock resulting from reinvestment of cash dividends upon such original or additional shares are as follows:

"(1)  During my lifetime all cash dividends are to be paid to me individually for my own personal account and use; provided, however, that any such addi-

tional stock purchased under an authorized reinvestment of cash dividends shall become a part of and subject to this trust.

"(2) Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary. The record date for the payment of dividends, rather than the date of declaration of the dividend, shall, with reference to my death, determine whether any particular dividend shall be payable to my estate or to the beneficiary.

"(3) During my lifetime I reserve the right, as trustee, to vote, sell, redeem, exchange or otherwise deal in or with the stock subject hereto, but upon any sale or redemption of said stock or any part thereof, the trust hereby declared shall terminate as to the stock sold or redeemed, and I shall be entitled to retain the proceeds of sale or redemption for my own personal account and use.

"(4) I reserve the right at any time to change the beneficiary or revoke this trust, but it is understood that no change of beneficiary and no revocation of this trust except by death of the beneficiary, shall be effective as to the Company for any purpose unless and until written notice thereof in such form as the Company shall prescribe is delivered to the Company at Minneapolis, Minnesota. The decease of the beneficiary before my death shall operate as a revocation of this trust.

"(5) In the event this trust shall be revoked or otherwise terminated, said stock and all rights and privileges thereunder shall belong to and be exercised by me in my individual capacity.

"(6) The Company shall not be liable for the validity or existence of any trust created by me, and any payment or other consideration made or given by the Company to me as trustee or otherwise, in connection with said stock or any cash dividends thereon, or in the event of my death prior to revocation, to the beneficiary, shall to the extent of such payment fully release and discharge the Company from liability with respect to said stock or any cash dividends thereon.

"Dated February 11, 1949.

C. W. MORRISON,
Signature of Applicant."

Pursuant to this declaration of trust and under its terms and conditions, and by reason of split shares and reinvestment of dividends, Clarence, at his death, held, as trustee, the sum of 267.514 shares of the capital stock of the company.

On February 11, 1949, the date of the instrument, the following statute was in effect:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same, shall be void and of no effect." (G. S. 1935, 33-101.)

It was and is contended by Clarence's executor that here the donor and trustee were one and the same person; that the donor had the right at any time to revoke the trust or change the bene-

ficiary; that the income from the trust property belonged to the donor; that title to the trust property remained in the donor, and that under the mentioned statute the trust was therefore void. Reliance is had on *Herd v. Chambers*, 158 Kan. 614, 149 P. 2d 583, in which it was held that under the statute in question a conveyance of goods and chattels, if made in trust for the use of the person making it, is void, irrespective of any fraudulent intent on the part of the person making the conveyance. The executor also relies on *Fry v. McCormick*, 170 Kan. 741, 228 P. 2d 727, for the proposition that a fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment, and that the same person cannot, at the same time, be trustee and beneficiary of the same identical interest.

(In passing, perhaps it should be noted that as of June 30, 1949, which was several months after the date of execution of the trust in question, G. S. 1935, 33-101, above, was amended, and as it now appears at G. S. 1949, 33-101, reads:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; but otherwise shall be valid and effective.")

In ruling adversely to the executor's contention and in holding that the stock represented by the trust certificate belonged to Daisy's estate, the trial court reasoned that a valid trust was created by the instruement; that the fact it was revocable did not void the trust; that there was nothing in the will of Clarence which revoked the trust; that during his lifetime Clarence held only the naked legal title to the stock and Daisy had a vested interest therein as beneficiary, and that upon the death of Clarence the stock contained in the trust became the property of Daisy, absolutely.

A careful reading of the provisions of the trust in the Herd case, above, discloses that in reality it was a conveyance in trust for the sole use and benefit of the grantor and thus was subject to the provisions of the statute (G. S. 1935, 33-101) prohibiting gifts and conveyances of goods and chattels in trust for the use of the person or persons making them. It clearly was for the benefit of the maker and contained no specific beneficiary other than the maker in whom any title could vest at the time of its execution.

While it is true that here the trust was revocable upon certain conditions and dividends were payable to Clarence during his life-

time, it nevertheless contained a specific beneficiary—Daisy—and we believe it may not be said that it was made for the "use" of Clarence within the meaning of the mentioned statute. Its terms directed the stock be issued in his name as trustee for her—the beneficiary. It stood unrevoked as of his death, and by its very terms title to the stock then became vested, absolutely, in her as the named beneficiary.

With respect to the Fry case, above, we fail to see where it supports the contention of Clarence's executor. In the trust before us the trustee and beneficiary were not the same person, and their interests were not identical. Clarence was the trustee—Daisy the beneficiary.

We believe that the trial court reached a correct conclusion in the matter.

Despite the various contentions in the brief of the executor-appellant concerning the foregoing and other matters, an examination of the record discloses that the trial court correctly decided all questions presented, and the judgment is in all respects affirmed.

Robb, J., dissents from that portion of the syllabus with reference to the trust in question and the corresponding portion of the opinion.