No. 46,728

In the Matter of the Estate of Pearl Ingram, Deceased. (EUNICE INGRAM, Administratrix of the Estate of Harold W. Ingram, Deceased, *Appellee,* v. FRANCES [GARNER] INGALLS, *Appellant.*)

(510 P. 2d 597)

Opinion filed May 22, 1973.

*Charles D. Kugler*, of Carson, Mahoney and Fields, of Kansas City, argued the cause and was on the briefs for the appellant.

*Thomas E. Joyce*, of Kansas City, argued the cause, and *Wash H. Brown*, of Kansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a proceeding originating in probate court to determine ownership of 2400 shares of mutual fund stock purchased by Pearl Ingram. The principal question is whether the stock became an asset of her estate at her death, which issue turns upon the effect to be given a declaration of trust executed by Pearl in her lifetime.

The contest is between the administratrix of the estate of a predeceased son of Pearl Ingram and Pearl's daughter, who is now Frances Ingalls, formerly Frances Garner, named as a residuary legatee in Pearl's will. Trial in district court upon certification from probate court resulted in judgment for the administratrix and the daughter Frances has appealed.

There was no factual difference raised by the evidence. Events pertinent commenced September 2, 1959, at which time Pearl Ingram executed an instrument denominated "Declaration of Trust-Revocable" in which her daughter Frances Garner was named as beneficiary. This document was on a standard form used by a brokerage firm, Waddell & Reed, Inc., Kansas City, Mo., to establish a trust account in mutual fund stock handled by them. On January 20, 1960, Pearl executed another such instrument identical in nature except it named her son Harold W. Ingram as beneficiary. This latter document was in pertinent part as follows:

"DECLARATION OF TRUST-REVOCABLE"

"I, the undersigned, having purchased or declared my intention to purchase shares of capital stock of UNITED FUNDS, INC. (the Company), and having directed that the certificate for said stock be issued in my name as trustee for Harold W. Ingram as beneficiary, whose address is  X  [Illegible]

(Street)        (City)

(Zone)        (State)

under this Declaration of Trust, DO HEREBY DECLARE that the terms and conditions upon which I shall hold said stock in trust and any additional shares of stock issued to me by way of a stock dividend or dividends upon such original shares shall be as follows:

"(1) During my lifetime all cash dividends are to be paid to me individually for my own personal account and use; provided, however, that any additional shares of stock issued to me by way of a stock dividend or dividends upon such original shares shall become a part of and be subject to this trust.

"(2) Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested in the Successor Trustee, if any, otherwise in the beneficiary. The record date for the payment of dividends, rather than the date of declaration of the dividend, shall, with reference to my death, determine whether any particular dividend shall be payable to my estate.

"(3) During my lifetime I reserve the right, as trustee, to vote, sell, redeem, exchange or otherwise deal in or with the stock subject hereto, but upon any sale or redemption of said stock or any part thereof, the trust hereby declared shall terminate as to the stock sold or redeemed, and I shall be entitled to retain the proceeds of sale or redemption for my own personal account and use.

"(4) [Provides for appointment of Successor Trustee]

"(5) I reserve the right at any time to change the beneficiary or revoke this trust, but it is understood that no change of beneficiary and no revocation of this trust except by death of the beneficiary, shall be effective as to the Company for any purpose unless written notice thereof in such form as the company shall prescribe is delivered to the Company at Kansas City, Missouri. The decease of the beneficiary before my death shall operate as a revocation of this trust and in such event, the beneficiary shall be divested of all interest in the shares held hereunder, and the appointment of the Successor Trustee shall be revoked.

"(6) In the event this trust shall be revoked or otherwise terminated, said stock and all rights and privileges thereunder shall belong to and be exercised by me in my individual capacity.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Dated January 20,      , 1960   X   Pearl Ingram
"Sign in exactly the same manner as on the application.
"To be executed in duplicate, one copy to be retained by the Purchaser and the other to be retained in the files of the Company."

Over a period of time Mrs. Ingram made a total of thirty purchases of United Income Fund stock. These purchases were made as a result of periodic calls upon her at her home in Bethel, Kansas, by a salesman for Waddell and Reed. She would sign a printed purchase order form designating the number of shares she wished to buy and indicating in whose name the shares should be issued. In every instance the particular purchase order directed that the shares be issued in the name of "Pearl Ingram, Trustee for [either Harold W. Ingram or Frances Garner]" and stock certificates evidencing the purchases were so issued. Fifteen purchases were made for Harold and fifteen for Frances in this manner (thirteen for each being made on the same day), with a corresponding number of shares purchased for each so that eventually a total of 2400 shares were issued for each.

The first two purchases of stock wherein Frances was named beneficiary occurred February 24, 1959, and September 4, 1959, and the first two with Harold as beneficiary occurred February 24,

1959, and January 20, 1960. The last two purchases were each made January 7, 1965. The first Waddell and Reed salesman who called on Pearl and established the account was deceased at the time of trial. The second salesman started calling on and selling stock to Pearl in 1960 or 1961. He was aware that trust declarations by Pearl had been in effect and he was never notified of any revocation.

On August 15, 1963, Pearl made her will. In this will she mentioned a third child, a daughter Helen, but left to her only one dollar saying that she had theretofore given real estate to her. She bequeathed a described tract of real estate to her daughter Frances and an adjacent tract to her son Harold. The will contained no other bequests or legacies and no other directions concerning disposition of property except a residuary clause which named Frances and Harold to take the remainder, share and share alike.

On January 21, 1965, upon the petition of the daughter Helen incompetency proceedings were commenced against Pearl, then seventy-nine years of age. On February 11, 1965, Pearl was adjudged incompetent and a guardian (later called conservator), the Commercial National Bank of Kansas City, Kansas, was appointed for her estate. In Pearl's safety deposit box at this bank the 4800 shares of United Income Fund stock were found, 2400 in Pearl's name as trustee for Frances and 2400 in Pearl's name as trustee for Harold. The safety deposit box did not disclose the existence of the trust declarations nor did it contain any evidence that Pearl during her competency had ever attempted to revoke the trust declarations. An officer of the bank made inquiry of Waddell and Reed respecting trust declarations by Pearl but was advised none could be found. The conservator's inventory showed the 4800 shares of stock held by her as trustee.

The next event of significance was the death of Harold W. Ingram, which occurred February 9, 1969. Harold died intestate and was survived by a widow and four children.

On April 25, 1969, Pearl Ingram, the mother, died testate.

On May 5, 1969, Eunice Ingram, widow of Harold W. Ingram and appellee herein, was appointed administratrix of Harold's estate.

On June 4, 1969, the will of Pearl Ingram was admitted to probate and the Commercial National Bank was appointed executor.

On June 25, 1969, the conservator bank's petition for final settlement of the incompetent's estate was approved by the probate court of Wyandotte county. That court's order of final settlement recited that Pearl in her lifetime and prior to her incompetency had established trusts of personal property for her daughter Frances and her son Harold, each trust consisting of 2400 shares of United Income Fund stock, and that each trust was irrevocable. This order further stated these shares were taxable to the estate of Pearl Ingram, deceased, for inheritance tax purposes and that they should be delivered to the Commercial National Bank in its capacity as executor of her estate for holding until the liability for such taxes was satisfied by the beneficiaries of the trusts and upon such satisfaction the bank should deliver the stock certificates for 2400 shares to Frances Garner and the certificates for 2400 shares to the estate of Harold W. Ingram, deceased. The attorney for the conservator testified the reason he prepared the order of final settlement with those findings and directions was the fact he was then unaware of the existence of the trust declarations. No appeal was ever taken from this order of final settlement of the conservatorship estate.

The attorney for the executor made further inquiries of Waddell and Reed in October, 1969, respecting the existence of trust declarations in connection with the shares and on November 6, 1969, he received from them copies of the two trust declarations in question which had been found in an old file.

Thereafter the executor of Pearl's estate filed an amended inventory of her property in which it listed as assets the 2400 shares of United Income Fund stock in the name of Pearl as trustee for Harold W. Ingram.

On March 3, 1970, Eunice Ingram, administratrix of the estate of her deceased husband Harold, petitioned the probate court to strike these 2400 shares from the inventory in Pearl's estate and for an order directing the executor to turn over these shares to her for listing among the assets of Harold's estate.

Frances Ingalls, formerly Frances Garner, then filed her objections to Eunice's petition, asserting that the shares belonged to Pearl prior to her death and should be distributed under the residuary clause of her will. As mentioned, Frances is a residuary legatee.

Thereafter, upon Eunice's request, the proceeding as to the stock

ownership was certified by the probate court to the district court for decision, pursuant to K. S. A. 59-2402.

In district court Eunice proposed two theories. First, she urged that the order of final settlement in the conservatorship estate was *res judicata* upon the issue of stock ownership, and second, in the alternative, she asserted that all 4800 shares of the mutual fund stock should be retained as assets in Pearl Ingram's estate (and distributed under the residuary clause of her will) on the theory the trust declarations purporting to create both trusts were ineffective for that purpose.

Upon hearing the evidence the trial court found for the petitioner Eunice but based its decision upon neither of her theories. The court first found there was no dispute as to the essential facts and that the controlling issue was the effect to be given the declaration of trust. It concluded that because Pearl did not own or have any property which she put into the trust at the time the trust declaration was executed no trust was created in the stocks by reason of the declaration. However, the court considered that the stock certificates themselves, because they were issued at Pearl's request, were alone sufficient to create a trust in the stocks. Moreover, the court noted that in her stock purchases and in her will Pearl Ingram was meticulous in dividing her property equally between Harold and Frances and it concluded Frances had not maintained her burden of proof to establish that the trust declaration was in effect at the time of Pearl's death. The court specifically declined to rule on the issue of *res judicata* raised by Eunice. It directed transfer of the 2400 shares of stock to her as administratrix of Harold's estate and Frances has now appealed from that order.

The issue of *res judicata,* reasserted here by appellee in support of her claim to the stock, should be dealt with first. The ruling relied upon was made by the probate court in its order of final settlement of the conservatorship estate. It ruled the trusts in question were irrevocable and directed the conservator to turn over the 4800 shares of stock to the executor of Pearl's estate for holding only to secure satisfaction of tax liability and upon such satisfaction it further directed delivery of the stock to Frances and to the estate of Harold, respectively.

Generally it may be said the purpose of a conservatorship for an incapacitated person under the provisions of K. S. A. 1972 Supp. Chap. 59, Art. 30, (which effective January 1, 1966, superseded

our former statutes respecting guardianship for an incompetent person) is to provide for the control and management of the estate of such person by a conservator during the lifetime of the conservatee. The conservator's rights and duties generally are prescribed in K. S. A. 1972 Supp. 59-3019.

K. S. A. 1972 Supp. 59-3028 in part provides:

*"Termination of guardianship or conservatorship, when.* The guardianship of a ward or the conservatorship of a conservatee shall terminate upon any of the following conditions:

"(A) When the ward or conservatee is an incapacitated person;

. . . . . . . . . . . . . . . .

"(2) upon the death of the ward or conservatee. . . ."

Once the conservatorship is terminated there remains only the single step of making an accounting and settlement. K. S. A. 1972 Supp. 59-3029 provides:

*"Accounting and settlement.* . . . At the termination of the conservatorship or upon the conservator's removal or resignation, he or his surety, or in the event of his death or incapacity, his representative or surety, shall present a verified final account with an application for the settlement and allowance thereof; and such conservator or his estate shall not be discharged from liability until such account is presented, settled, and allowed."

K. S. A. 1972 Supp. 59-3030 makes provision for the giving of notice of the hearing on an accounting.

K. S. A. 1972 Supp. 59-3031 provides:

*"Hearing on accounting.* On the hearing, unless otherwise ordered, the conservator shall, and other persons may, be examined. If the account is correct, it shall be settled, and allowed. The order of settlement and allowance shall show the amount of the personal property remaining. Upon settlement of the final account, and upon delivery of the property on hand to the person entitled thereto, the court shall discharge the conservator and his sureties."

The foregoing appear to be the extent of statutory direction on the matter at issue. We find nothing which authorizes a probate court in settling a conservatorship estate to determine ownership and make distribution of assets of the conservatee on hand after the conservatee has died and a personal representative has been appointed to administer his estate. To hold such authority might well have the effect of completely frustrating the orderly administration of a decedent's estate in which actual disposition of his property is to be made. We have no occasion and would not attempt here to delineate the outer limits of the authority of a probate court in ordering transfer of a deceased conservatee's property to third persons upon final settlement of the conservatorship. It is

sufficient to say, and we so hold, that where a conservatee has died and a personal representative for his estate has been duly appointed, thereafter a probate court in settling the conservatorship estate has no authority to order delivery of the remaining property on hand in the conservatorship estate to anyone other than the fiduciary for the decedent's estate.

An order of the probate court in a matter beyond its jurisdiction is void and subject to attack in a collateral proceeding (*Magaw v. Emick,* 167 Kan. 580, Syl. ¶ 7, 207 P. 2d 448). Applied here this means the June 25, 1969, order asserted as *res judicata* was beyond the power of the court to make and is void and of no effect.

The parties disagree as to which law should govern disposition of the issues raised with respect to the declarations of trust. Appellee Eunice says the law of Missouri should govern because the purchase applications were accepted and the certificates of stock were issued and registered in Kansas City, Mo., where the offices of Waddell and Reed and of the registry agent for United Funds stock are located. By this avenue appellee would lead us to a result reached by the Missouri Supreme Court declaring that a similar trust declaration purporting to establish a trust in certain mutual fund stock was ineffective (see *Edgar v. Fitzpatrick,* 377 S. W. 2d 314, reversing *Edgar v. Fitzpatrick,* Mo. App., 369 S. W. 2d 592).

Appellant Frances asserts Kansas law should apply, pointing out that Pearl, Harold and Frances were all residents of Kansas, applications for all stock purchases were made in Pearl's Kansas home and the stock certificates comprising the trust property were to be held in Kansas and in fact were so held.

In *United States v. Powell,* 307 F. 2d 821 (10 CA, 1962), the court dealt with the choice of law issue in a trust situation and held:

"The trust instrument was executed and was to be carried out in the State of Kansas, for the benefit of persons who were citizens and residents of that state. It was governed, therefore, by Kansas law." (p. 824.)

The foregoing accords with the general law on the subject (see 90 C. J. S., Trusts, § 160) and we are content that its application is proper here where virtually every significant factor is Kansas-related.

Appellant contends the trust asserted to be established pursuant to the trust declaration contained all the requisites for an express trust, that by the declaration an express revocable trust came into being, the trust declaration was plain and unambiguous in its terms; and by those terms the trust created for Harold's benefit was re-

voked and terminated by his death (¶ 5) and the ownership of the stock reverted to Pearl during her lifetime (¶ 6).

The essential elements of an express trust were enunciated in *Shumway v. Shumway*, 141 Kan. 835, 44 P. 2d 247, as (1) an explicit declaration and intention to create a trust, (2) definite property or subject matter of the trust, and (3) the acceptance and handling of the subject matter by the trustee as a trust.

Appellee responds by citing *Edgar v. Fitzpatrick*, supra, in support of her contention the trust declaration was ineffective; she further asserts the declaration was testamentary in character but lacked the formalities requisite for testamentary disposition and further that Pearl's will revoked any trust declaration previously made by her. No authority or cogent argument is advanced for this latter contention and we are aware of none.

Most of the arguments made by appellee were present in *In re Estate of Morrison*, 189 Kan. 704, 371 P. 2d 171, and were rejected. There a husband executed an instrument entitled "Declaration of Trust—Revocable" which was essentially the same as that in the case at bar and mutual fund stock was purchased, issued and held by him as trustee for his wife as beneficiary. Recapitulating, the settlor retained the right to change the beneficiary or revoke the trust, he retained the right to receive the income from the property during his lifetime, and named himself trustee; a third party, the investment company handling the mutual stock, was required to be notified of any changes in or of revocation of the trust. The settlor signed a purchase order form essentially the same as that in the case at bar. Each spouse had children by a former marriage. The wife Daisy outlived the husband Clarence and the dispute over ownership of the stock was between their two estates. We quote from *Morrison* the following:

"On February 11, 1949, the date of the [declaration of trust] instrument, the following statute was in effect:

" 'All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same, shall be void and of no effect.' (G. S. 1935, 33-101.)

"It was and is contended by Clarence's executor that here the donor and trustee were one and the same person; that the donor had the right at any time to revoke the trust or change the beneficiary; that the income from the trust property belonged to the donor; that title to the trust property remained in the donor, and that under the mentioned statute the trust was therefore void. Reliance is had on *Herd v. Chambers*, 158 Kan. 614, 149 P. 2d 583, in which it was held that under the statute in question a conveyance of goods and chattels, if made in trust for the use of the person making it, is void, irrespective

of any fraudulent intent on the part of the person making the conveyance. The executor also relies on *Fry v. McCormick*, 170 Kan. 741, 228 P. 2d 727, for the proposition that a fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment, and that the same person cannot, at the same time, be trustee and beneficiary of the same identical interest.

"(In passing, perhaps it should be noted that as of June 30, 1949, which was several months after the date of execution of the trust in question, G. S. 1935, 33-101, above, was amended, and as it now appears at G. S. 1949, 33-101, reads:

" 'All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; but otherwise shall be valid and effective.' )

"In ruling adversely to the executor's contention and in holding that the stock represented by the trust certificate belonged to Daisy's estate, the trial court reasoned that a valid trust was created by the instrument; that the fact it was revocable did not void the trust; that there was nothing in the will of Clarence which revoked the trust; that during his lifetime Clarence held only the naked legal title to the stock and Daisy had a vested interest therein as beneficiary, and that upon the death of Clarence the stock contained in the trust became the property of Daisy, absolutely.

"A careful reading of the provisions of the trust in the Herd case, above, discloses that in reality it was a conveyance in trust for the sole use and benefit of the grantor and thus was subject to the provisions of the statute (G. S. 1935, 33-101) prohibiting gifts and conveyances of goods and chattels in trust for the use of the person or persons making them. It clearly was for the benefit of the maker and contained no specific beneficiary other than the maker in whom any title could vest at the time of its execution.

"While it is true that here the trust was revocable upon certain conditions and dividends were payable to Clarence during his lifetime, it nevertheless contained a specific beneficiary—Daisy—and we believe it may not be said that it was made for the 'use' of Clarence within the meaning of the mentioned statute. Its terms directed the stock be issued in his name as trustee for her—the beneficiary. It stood unrevoked as of his death, and by its very terms title to the stock then became vested, absolutely, in her as the named beneficiary.

"With respect to the Fry case, above, we fail to see where it supports the contention of Clarence's executor. In the trust before us the trustee and beneficiary were not the same person, and their interests were not identical. Clarence was the trustee—Daisy the beneficiary.

"We believe that the trial court reached a correct conclusion in the matter.

"Despite the various contentions in the brief of the executor-appellant concerning the foregoing and other matters, an examination of the record discloses that the trial court correctly decided all questions presented, and the judgment is in all respects affirmed." (pp. 708-710.)

Resort to the briefs in *Morrison* discloses the losing litigant as-

serted, among other things, that reservation of the power to revoke the trust and of a life interest rendered the trust testamentary in character so as to make it invalid for want of proper attestation. Thus it appears *Morrison* is authority for the proposition that a revocable trust may validly be created in mutual fund stock under a declaration of trust described therein, and the case has been so interpreted (see Comments, 11 Kan. L. Rev. 375; Logan, "Real Property and Future Interests", 12 Kan. L. Rev. 305, 324, in which the author states: "[*Morrison*] goes a long way toward clearing for use this increasingly popular estate planning arrangement" [p. 325]; Logan, "Mr. Dacey and His Book", 36 J. B. A. K. 181, 184).

Appellee argues that *Morrison* was subsequently modified by this court's ruling in *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P. 2d 840, rehearing denied, 192 Kan. 471, 389 P. 2d 1. We cannot agree. In *Ackers* statutory rights of a surviving spouse were at stake and were of controlling significance in the decision reached which partially invalidated a trust, as pointed out in the opinion on rehearing which emphasized that the facts in *Morrison* were so materially different as to make the latter inapplicable. In *Ackers* I this court held:

"The transfer of property to a trustee under an agreement whereby the settlor reserves to himself the income during his life with the power to revoke, is valid by virtue of G. S. 1949, 33-101 and 67-414, subject only to the rights of creditors and the statutory rights of a surviving spouse." (Syl. ¶ 1.)

We know of no reason why *Morrison* should not control in the case at bar where neither rights of a surviving spouse nor of settlor's creditors are involved. The thrust of the decision of the Missouri Supreme court in *Edgar v. Fitzpatrick*, supra, relied upon heavily by appellee here, appears to be that the trust declaration was ineffective because no definitely ascertainable property was placed in the trust at the time of its creation. That is not our situation here, a fact apparently overlooked by the trial court in its decision invalidating the revocable trust sought to be created by the declaration on the ground there was no trust *res* at the time Pearl executed the declaration.

In the case at bar Pearl's initial purchase of stock as trustee for Harold occurred February 24, 1959, when she bought 1100 shares for him (on the same day she bought 1100 for Frances). Pearl's second purchase of stock as trustee for Harold occurred January 20, 1960—the same date she executed the declaration of trust in favor of Harold—at which time she bought fifty shares for him

(Pearl made a second purchase of fifty shares of stock for Frances at the same time she executed the declaration of trust for Frances). Thus definitely ascertainable property was placed in the trust at the time the trust declaration was executed.

There appears to be no problem as to the later acquired stock as it likewise was definitely earmarked as trust property, each subsequent purchase being ordered on a form indicating the manner in which the stock certificate was to be issued and each certificate was so identified. The rule on this is stated in an annotation on "Trusts—Future Acquired Property" appearing at 3 ALR 3d 1416 as follows:

"As a general rule, the mere fact that one declares a trust in property which may be acquired in the future does not automatically give rise to a trust in the property when it is acquired. However, where one declares a trust in property to be acquired in the future, and upon or after acquiring the property, he confirms his previously manifested intention to create the trust or repeatedly manifests an intention to the same effect, a trust is then created in the property. [p. 1430.]

· · · · · · · · · · · · · · ·

"It is generally recognized that where a person manifests an intention to create a trust, whether by declaring himself trustee or otherwise, in property which may be acquired in the future, and if he, upon or after acquiring the property, confirms his previously manifested intention to create the trust or repeatedly manifests an intention to the same effect, a trust is then created in the property (assuming that the transaction does not, under any theory, automatically give rise to a trust at the time of the acquisition of the property)." (p. 1439.)

All essential elements of a trust appear with respect to the 2400 shares of stock in question and we hold that a valid trust therein was created by reason of the trust declaration. Under that declaration the death of the beneficiary Harold prior to the decease of the settlor-trustee revoked the trust and divested the beneficiary of all interest in the shares, and the trial court erred in ruling otherwise.

The judgment is reversed and the cause is remanded with directions to render judgment for the appellant Frances Ingram.

APPROVED BY THE COURT.

FROMME, J., concurring: Time does not permit an extended discussion of my dissatisfaction with the holding in this case. It is my view that the trust disposition in this case is testamentary and is invalid as violative of the statute of wills. I would overrule the questionable holding of this court in *In re Estate of Morrison*, 189 Kan. 704, 371 P. 2d 171, and hold the trust attempted by Pearl

Ingram invalid. The majority reaches the same result by holding the trust valid but determining the trust was revoked on the death of the son.

The uncertainty which occurs in rules of law regarding trusts arises in the cases from failure to keep in mind the three participants in a trust transaction, the settlor, the trustee and the beneficiary. In few reported cases, such as here, do we have one individual participating in the transaction as settlor, as sole trustee and as sole beneficiary during the lifetime of the settlor plus the provision in the trust instrument reserving the right to revoke the trust. This is the exact situation in the present case. The remainderman beneficiary has no vested beneficial interest in either the trust property or the income during the lifetime of the settlor. His future entitlement depends entirely upon a failure of the settlor-trustee-life beneficiary to revoke the trust. It should be noted in this case that on the death of the settlor-trustee-life beneficiary there *is* no trustee remaining *to* transfer the legal title. In both *Morrison* and in the present case the legal title, formerly in the settlor-trustee-life beneficiary, somehow passes by reason of the instrument and does not depend upon any act of a successor trustee. In other words the instrument is a testamentary disposition of property. It is not executed according to the statute of wills and is therefore invalid.

The Restatement, Second, Trusts, § 56, states:

"Where no interest in the trust property is created in a beneficiary other than the settlor before the death of the settlor, the disposition is testamentary and is invalid unless the requirements of the Statute of Wills are complied with."

Cases in support thereof are many. See *Matter of Sahakian,* 44 Misc. 2d 849, 255 N. Y. S. 2d 520; *Dawson v. Dawson's Administratrix,* Ky., 272 S. W. 2d 666; *Smyth v. Cleveland Trust Co.,* 81 Ohio Abs. 581, 10 Ohio Ops. 2d 448, 163 N. E. 2d 702; *Brown Estate,* 384 Pa. 99, 119 A. 2d 513. When an instrument in writing defers the vesting of possession, enjoyment and interest in property until the death of the maker it is testamentary in nature. (*Reed, Ex'r, v. Hazelton,* 37 Kan. 321, 15 Pac. 177; *Hazelton v. Reed,* 46 Kan. 73, 26 Pac. 450; *Glover v. Fillmore,* 88 Kan. 545, 129 Pac. 144, 89 Kan. 480, 132 Pac. 147.)

In the present case the son held no present interest in the trust property, neither interest, possession nor enjoyment.

In an article in 36 J. B. A. K. 181 by James K. Logan, former dean of the Kansas University Law School, the *Morrison* case is justified

as not being testamentary in nature or violative of the statute of wills by reason of the provision in the Declaration of Trust requiring the settlor-trustee-life beneficiary to notify the mutual fund corporation before changes were effected as to the trust property, such as in case of change of ownership and revocation.

This requirement appears to be inserted for the protection of the mutual fund corporation in which company the shares of stock were held. The company had no control over the actions of the settlor-trustee-life beneficiary which would in any way limit the power of the settlor. If the trust is testamentary these requirements for proper transfer or change in certificates evidencing ownership would not make the trust any less objectionable under the statute of wills.

In conclusion I would point out that although the court in *Morrison* attached significance to the change made by the legislature in G. S. 1935, 33-101 as it appeared in G. S. 33-101 (now K. S. A. 33-101) the statutory change had little significance in that case for it is part of the statute of frauds. Its purpose is to protect creditors against transfers by a debtor to a trustee for the purpose of defeating creditors. *Morrison* was not concerned with the rights of creditors. The statute is not an enabling act which changes the requirements of a valid trust. Therefore it is doubtful if the change in the statute was significant.

The holding in *Morrison* renders the statute of wills ineffective and its approval here will result in much litigation as the members of the public attempt to avoid probate of their estates by placing their property under this type of a trust.

This court should not perpetuate the erroneous rules of law as applied in the *Morrison* case. I would hold the trust invalid, accordingly I concur only in the result.

PRAGER, J., joins in the foregoing concurring opinion.

SCHROEDER, J., concurring: The concurring opinion of Mr. Justice Fromme, in which I join, expresses my view that the trust disposition in this case is testamentary in character and is invalid as violative of the statute of wills.

Going beyond this point, I do not think the trust instrument can be given effect for another reason. The trial court found Frances, daughter of Pearl Ingram, deceased, had not sustained

her burden of proof to establish that the trust declaration was in effect at the time of Pearl Ingram's death. This is, in effect, a finding that the trust had been revoked during the life of the settlor, which by the specific terms of the trust instrument the settlor had reserved the right to do.

The trust instrument on its face indicated it was executed in duplicate by the settlor. Neither of the two original copies executed by the settlor were produced. The conservator, appointed when Pearl Ingram was adjudicated incompetent, did not find an original trust declaration executed by Pearl Ingram among Pearl's valuable papers or anywhere else. *The company, United Funds, Inc.,* produced no original, which they were required to keep for their protection, but the *brokerage firm of Waddel & Reid, Inc.* did produce *a copy* of the two trust declarations from an old file. The original search by the *brokerage firm* produced no trust declaration executed by Pearl Ingram.

On the foregoing record the trial court was clearly within its powers when it declared that Frances had failed to sustain her burden of proof to establish the trust declaration was in effect at the time of Pearl Ingram's death.

Revocation of a written trust declaration, as in the case of a will, may be accomplished by burning or destroying the instrument with the intention to revoke the instrument, unless otherwise indicated in the document creating the trust. Under the circumstances it must be presumed that Pearl Ingram revoked the trust while she was mentally competent to do so. Frances, upon whom the burden of proof was cast to establish the existence of the trust, failed to overcome this presumption by any evidence whatever.