No. 59,675

In the Matter of the Estate of NONA E. MORTON, DECEASED. MARY MOORE and RONNIE MOORE, *Appellees*, v. SETH MOORE, GENE MOORE, MAUDE AGNES FISHER, LULA MOORE , NONA JO NOEL, LIZZIE GORMAN, VIOLET MAE HERNDON, and CAMBRON CLIFF MOORE, *Appellants*.

(740 P.2d 571)

Opinion filed July 17, 1987.

*Walker A. Hendrix,* of Hendrix & Clark, of Ottawa, argued the cause, and *Shelly Hickman Clark,* of the same firm, was with him on the briefs for appellants.

*Richard O. Skoog,* of Skoog & Latimer, of Ottawa, argued the cause and was on the brief for appellees.

*John W. Gardner,* of Watson, Ess, Marshall & Enggas, of Olathe, and *William T. Smith, III,* and *Kathryn M. Coonrod,* of the same firm, of Kansas City, Missouri, were on the brief for *amicus curiae* Franklin Savings Association.

*Gerald L. Goodell,* and *Les E. Diehl,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, were on the brief for *amicus curiae* Kansas League of Savings Institutions.

The opinion of the court was delivered by

HERD, J.: This is a suit by the residuary legatees under the will of Nona Morton to determine the ownership of certain savings accounts established by Nona Morton in the Franklin Savings Association. The appellees are the named beneficiaries of the accounts who were named to receive the proceeds upon the decedent's death. The trial court granted judgment for the named beneficiaries. The Court of Appeals reversed. See *In re Estate of Morton,* 12 Kan. App. 2d 26, 733 P.2d 834 (1987).

Prior to her death, Nona E. Morton established two savings accounts, Numbers 98871 and 41792, at the Franklin Savings Association. The accounts were each entitled "Discretionary Revocable Trust Agreement," and named Nona Morton as both grantor and trustee, and designated Mary, Frank, and Ronnie Moore as beneficiaries.

The agreements provided in relevant part:

"The funds in the account indicated on the reverse side of this instrument, together with earnings thereon, and any future additions thereto are conveyed to the trustee as indicated for the benefit of the beneficiary or beneficiaries as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage, pledge, invest and reinvest said funds in his sole discretion; (2) The undersigned grantor reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee if he is the grantor shall be a revocation by the grantor to the extent of such withdrawal, but

no other revocation shall be valid unless and until written notice it [sic] given to the institution named on the reverse side of this card . . . (4) This trust, subject to the right of revocation, shall continue for the life of the grantor, and at his death, the proceeds may be delivered by the association to the beneficiary or to his heirs, or to his trustee on his or their behalf . . . (6) The institution in which such funds are invested is authorized to pay the same or to act in any respect affecting said account before or after the termination of this trust upon the signature of the trustee and has no responsibility to follow the application of the funds."

At some point, these two original accounts were transferred to new accounts, which at the time of Nona Morton's death were designated as NOW Account 001-0126096 and CD 001-0107394.

On September 6, 1973, Ernest Watkins was appointed as a voluntary conservator for Nona Morton. In order to obtain higher interest rates, Watkins transferred the money in the accounts to additional accounts, which also included certificates of deposit. The signature card forms of the accounts remained constant except on one occasion when the Franklin Savings Association used a different form. This was later corrected by Nona Morton's conservator in order to preserve what he believed was Nona Morton's original intent.

As interest accumulated on the accounts, it was withdrawn as needed by Watkins and placed in a checking account which was used to pay Nona's expenses.

Nona Morton died on November 10, 1982. During the probate of her estate, the trust accounts established at Franklin Savings became the subject of a dispute between the appellants (who are the residuary legatees of Nona Morton's will) and the appellees, Mary and Ronnie Moore. The appellants contend the accounts were invalid *Totten* trusts and thus should be distributed under the residuary clause of the will. Appellees, on the other hand, argue the accounts were valid and the funds should be paid to the named beneficiaries.

The district court upheld the trust arrangement and reasoned that since *Totten* trusts are similar to "payable on death" accounts which are statutorily authorized by K.S.A. 1986 Supp. 9-1215, *Totten* trusts must also be valid.

The Court of Appeals reversed the district court and concluded the trusts were invalid because (1) they did not satisfy traditional trust principles; and (2) they were testamentary in

nature and failed to comply with the statute of wills, K.S.A. 59-606. We granted appellees' petition for review.

This case presents an issue of first impression—whether *Totten* trusts are valid in Kansas. *Totten* trusts, sometimes described as tentative trusts or savings account trusts, are created by depositing one's own money into a bank, savings and loan, or credit union account as "trustee" for certain named beneficiaries. The depositor retains the power to withdraw any or all of the principal or income from the account or to otherwise revoke the trust. The trust beneficiaries' right to the trust funds does not arise until the depositor's death. See Note, *Will Substitutes in Kansas*, 23 Washburn L.J. 132, 153-54 (1983); Restatement (Second) of Trusts § 58 (1957). *Totten* trusts derive their name from the leading case establishing their validity, *Matter of Totten*, 179 N.Y. 112, 71 N.E. 748 (1904). The typical *Totten* trust is described in Comment, *Totten Trusts in Kansas*, 9 Kan. L. Rev. 46 (1960), as follows:

> "*A* deposits money in a savings account in his own name as trustee for *B. A* retains the passbook and all control over the account during his lifetime, even making withdrawals for his personal use from time to time. *A* dies. *B,* unaware of this account until *A's* death, claims the account as beneficiary of the trust. *A's* executor claims it as part of *A's* estate."

The trusts created by Nona Morton in this case contain all of the characteristics outlined above and are appropriately termed "*Totten* trusts." Nona Morton deposited money in savings accounts in her own name as trustee for the beneficiaries Ronnie, Mary, and Frank Moore. Either Nona or her conservator retained control of the accounts during Nona's lifetime for her personal use. At Nona's death, the beneficiaries claimed they were entitled to the proceeds of the accounts as beneficiaries of the trusts, while the residuary legatees claimed the proceeds as part of the estate.

The determination that the trusts involved are "*Totten* trusts" brings us to the question of whether such trusts are valid in this state. Resolution of this issue requires consideration of a number of other questions, the analysis of which is described in 1A Scott on Trusts § 58.3 (4th ed. 1987):

> "Where a person makes a deposit in his own name in trust for another and the inference is or the evidence shows that the depositor did not intend to create a

trust, no question arises as to the effect of the Statute of Wills. In such a case on the death of the depositor the beneficiary is not entitled to the deposit, not because the disposition is testamentary, but because no trust was ever created in his favor. On the other hand if the inference is or the evidence shows that the depositor intended to create an irrevocable trust, no question arises as to the effect of the Statute of Wills. In such a case on the death of the depositor the beneficiary is entitled to the deposit and can charge the estate of the depositor with liability for any withdrawals that he may have made for his own benefit during his lifetime. The disposition is not testamentary since it is not ambulatory. This is true even though the depositor reserved power to use the income arising from the deposit for his own benefit, since the trust as to the principal is irrevocable.

"Where, however, the inference is or the evidence shows that the depositor intended to create a trust but also intended to reserve power during his lifetime to deal with the deposit in any way he should choose, the question arises whether the making of such deposit is a testamentary disposition and invalid under the Statute of Wills."

Thus, the initial question for determination is whether the savings accounts established by Nona Morton constitute valid trusts under the laws of this state.

This court set forth the elements necessary to create an express trust in *Shumway v. Shumway*, 141 Kan. 835, 842, 44 P.2d 247 (1935). These elements are: (1) an explicit declaration and intent to create a trust; (2) definite property or subject matter of the trust; and (3) the acceptance and handling of the subject matter by the trustee as a trust. See *Jennings v. Jennings*, 211 Kan. 515, Syl. ¶ 3, 507 P.2d 241 (1973); *Pizel v. Pizel*, 7 Kan. App. 2d 388, 392, 643 P.2d 1094, *rev. denied* 231 Kan. 801 (1982).

With respect to the intent element, the Court of Appeals held that the facts and circumstances surrounding Nona Morton's dealings with these accounts contradict her declaration of trust intent on the signature cards. The court noted that the decedent did not deal with the subject property to the benefit of the named beneficiaries, but instead controlled the movement of the monies in and out of the accounts and always treated the accounts as her own to be used for her needs and benefit. We disagree with this conclusion that the decedent's actions nullified the trust.

In determining the validity of *Totten* trusts, most jurisdictions hold that the form of the deposit is conclusive as to trust intent unless evidence is shown the depositor had a contrary objective.

Bogert, Trusts and Trustees § 47 (2d ed. rev. 1984). In the instant case, the trust instruments are entitled "Discretionary Revocable Trust Agreement" and contain specific trust language. Thus, we hold Nona Morton's intent to establish a trust is established from the face of the instrument.

The Court of Appeals further determined that, because of the trustee's retention of the power to revoke and the power to use both principal and income, the trust relationship appears illusory and creates the opportunity for fraud. This determination is not in accord with our decision in *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 325, 387 P.2d 840 (1963), where we held a grantor's right to remove trust assets or revoke the trust did not necessarily invalidate the trust. See *In re Estate of Ingram*, 212 Kan. 218, 510 P.2d 597 (1973), and *In re Estate of Morrison*, 189 Kan. 704, 371 P.2d 171 (1962). Moreover, as with the issue of intent, it is generally held that the inference from the form of a savings account deposit is that a revocable trust is created. 1A Scott on Trusts § 58.4, p. 214. Restatement (Second) of Trusts § 58 (1957), states:

"Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

We hold all the elements necessary to the creation of a valid trust are present here: (1) declaration and intention to create a trust, (2) description of the property, and (3) trustee's handling and acceptance of the subject matter as a trust; and that Nona E. Morton created valid savings account trusts.

In spite of the finding the decedent created valid trusts, we must still determine whether such trusts are testamentary in nature, and accordingly must comply with the statute of wills, K.S.A. 59-606, which provides in pertinent part:

"Every will, except an oral will as provided in K.S.A. 59-608, shall be in writing, and signed at the end thereof by the party making the same, or by some other person in the presence and by the express direction of the testator and shall be attested and subscribed in the presence of such party by two or more

competent witnesses, who saw the testator subscribe or heard the testator acknowledge the same."

It is argued the issue of whether *Totten* trusts are testamentary in character is resolved by *Truax v. Southwestern College,* 214 Kan. 873, 522 P.2d 412 (1974).

*Truax* concerned the validity of payable on death (P.O.D.) accounts. P.O.D. accounts are established where funds are deposited in a bank or savings and loan association for the benefit of another, and are payable upon the death of the depositor. 23 Washburn L.J. at 147. While *Totten* trusts and P.O.D. accounts are similar in that they have the same effect, they are distinguishable in that P.O.D. accounts are based on contract, rather than trust principles. In a P.O.D. account, the bank or savings institution, under the terms of its contract with the depositor, agrees to pay the proceeds remaining in the account to a named beneficiary upon the depositor's death. Thus, the named beneficiary's claim to the proceeds of the account is based on a third-party beneficiary theory.

The *Truax* court held the attempted dispositions were invalid since the P.O.D. accounts in question were not executed in compliance with K.S.A. 59-606. The court reasoned as follows:

"The transfer of a bank account, to take effect at the death of the depositor, who retains control during his life, is testamentary in character and void if not executed as a will, whether the intention of the depositor is to provide for a trust or to make a direct gift." 214 Kan. 873, Syl. ¶ 5.

Appellees argue *Truax* is inapplicable here because that case concerned P.O.D. accounts rather than *Totten* trusts. They reason that any statements made in *Truax* regarding the validity of similar arrangements are purely dicta. However, we do not find it necessary to reach the issue of whether *Truax* invalidated *Totten* trusts since *Truax* has been legislatively overruled by K.S.A. 1986 Supp. 9-1215, K.S.A. 1986 Supp. 17-5828 and K.S.A. 1986 Supp. 17-2263.

The Kansas Legislature enacted what are now K.S.A. 1986 Supp. 9-1215 -1216; K.S.A. 1986 Supp. 17-5828 -5829; and K.S.A. 1986 Supp. 17-2263 -2264 in 1979 in order to authorize the transfer of property through P.O.D. accounts without compliance with the statute of wills.

K.S.A. 1986 Supp. 17-5828 provides in part:

"An individual adult or minor, hereafter referred to as the owner, may enter into a written contract with any savings and loan association located in this state providing that the balance of the owner's deposit account, or the balance of the

owner's legal share of a deposit account, at the time of death of the owner shall be made payable on the death of the owner to one or more persons or, if the persons predecease the owner, to another person or persons, hereafter referred to as the beneficiary or beneficiaries. . . .

"Transfers pursuant to this section shall not be considered testamentary or be invalidated due to nonconformity with the provisions of chapter 59 of the Kansas Statutes Annotated.

"Every contract authorized by this section shall be considered to contain a right on the part of the owner during the owner's lifetime both to withdraw funds on deposit in the account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of beneficiary. The interest of the beneficiary shall be considered not to vest until the death of the owner."

K.S.A. 1986 Supp. 9-1215 is nearly identical to K.S.A. 1986 Supp. 17-5828 and K.S.A. 1986 Supp. 17-2263, except that 9-1215 applies to banks rather than savings and loan associations or credit unions.

With the enactment of the above statutes, the legislature effectively overruled the *Truax* decision with respect to payable on death accounts. Thus, the question this court must now decide is whether *Totten* trusts, such as the ones created by Nona Morton in the instant case, also come within the statutorily created exception to the statute of wills.

The district court determined that since P.O.D. accounts are now authorized by statute and since the end result of a *Totten* trust is identical to that of a P.O.D., *Totten* trusts are valid dispositions of property and need not comply with the statute of wills. The Court of Appeals disagreed, and held that the fact that the legislature created an exception to the statute of wills for P.O.D. accounts does not validate the use of *Totten* trusts.

An examination of K.S.A. 1986 Supp. 9-1215, K.S.A. 1986 Supp. 17-5828, and K.S.A. 1986 Supp. 17-2263 leads to the conclusion that these enactments do validate *Totten* trusts. The statutes clearly refer to accounts whereby the account owner enters into a written contract with the bank or other institution providing that the balance should be paid to the named beneficiary at the owner's death. Both P.O.D. accounts and *Totten* trusts require the bank, savings and loan institution, or credit union to pay the proceeds of the account to the named beneficiaries upon the death of the depositor. When we look beyond form to substance, we see such language is broad enough to show the legislature

intended to remove those types of accounts from the statute of wills. Accordingly, we hold the statutes apply to savings account trusts as well as P.O.D. accounts.

We affirm the trial court and reverse the Court of Appeals.